Arthur Alonzo **MARES**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 7254.

United States Court of Appeals
Tenth Circuit.

May 7, 1963.

3. In re Texas Co., 91 U.S.App.D.C. 272, 201 F.2d 177; Morris v. United States, **5** Cir., 128 F.2d 912.

Donald S. Molen, Denver, Colo., for appellant.

Lawrence M. Henry, U. S. Atty. for Dist. of Colorado, and Michael C. Villano, Asst. U. S. Atty., for appellee.

Before PICKETT and SETH, Circuit Judges, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

Appellant was convicted upon the verdict of a jury of the illegal possession of a sawed-off shotgun made in violation of the National Firearms Act, 26 U.S.C. § 5821 and § 5851.[1]

By timely motions to suppress evidence, for acquittal, in arrest of judgment and for a new trial, the following contentions were presented by the appellant to the trial court, and are relied upon in this appeal for reversal: (1) That the evidence was insufficient to authorize the conviction; (2) that 26 U.S.C. § 5851 is unconstitutional as requiring self-incrimination contrary to the Fifth Amendment; and (3) that the court erred in denying defendant's motion to suppress evidence.

■ The evidence was adequate to support the conviction. Possession by the defendant of a sawed-off shotgun constituting a firearm within the definition of the act[2] clearly was shown, aside

---

[1] "§ 5821. *Rate, exceptions, etc.*

"(a) *Rate.*—There shall be levied, collected, and paid upon the making in the United States of any firearm (whether by manufacture, putting together, alteration, any combination thereof, or otherwise) a tax at the rate of $200 for each firearm so made. * * *" (As amended Sept. 2, 1958, Pub.L. 85–859).

"(e) *Declaration.*—It shall be unlawful for any person subject to the tax imposed by subsection (a) to make a firearm unless, prior to such making, he has declared in writing his intention to make a firearm, has affixed the stamp described in subsection (d) to the original of such declaration, and has filed such original and a copy thereof. The declaration required by the preceding sentence shall be filed at such place, and shall be in such form and contain such information, as the Secretary or his delegate may by regulations prescribe. * * *"

"§ 5851. *Possessing firearms illegally.* It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of section 5811, 5812(b), 5813, 5814, 5844, or 5846, or which has at any time been made in violation of section 5821, or to possess any firearm which has not been registered as required by section 5841. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury." (As amended Sept. 2, 1958, Pub.L. 85–859).

[2] 26 U.S.C.A. "§ 5848. *Definitions*

"For purposes of this chapter—

"(1) *Firearm.* The term 'firearm' means a shotgun having a barrel or bar-

from the question of illegal search which will be discussed later.

It was established at the trial that the defendant had not filed a declaration of intent to make or acquire by transfer the firearm found in his possession. There was evidence of test firing which established that it was capable of firing a 20 gauge shotgun shell and it was apparent that it was capable of being concealed on the person.

■ Section 5851 provides that when a defendant is shown to have had possession of a "firearm," "such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury." The defendant attempted no explanation, the evidence of the government disclosed none, and the evidence received in view of the statutory presumption properly carried the case to the jury. *Wright v. United States*, 243 F.2d 546 (6th Cir., 1957); cf. *Lucero v. United States*, 311 F.2d 457 (10th Cir., 1962).

■ The declaration requirement contained in 26 U.S.C. § 5821(e) does not violate the constitutional safeguard against self-incrimination in respect to prosecutions for possession of firearms illegally made. The defendant's reliance upon *Russell v. United States*, 306 F.2d 402 (9th Cir., 1962), is unjustified. That case involved in effect an attack upon 26 U.S.C. § 5841,[3] which presents constitutional problems foreign to Section 5821 on which the charge against appellant with which we are concerned was premised.[4] Section 5821 requires one who desires to make a firearm to file a declaration of intent with the Secretary of the Treasury and to pay the prescribed tax. In contrast with Section 5841, there is no self-incrimination inhering in the filing of the latter declaration or the payment of the tax. The declaration and payment required by Section 5821 would establish the legality, rather than illegality, of the possession of such a firearm.

■ Nor are there constitutional obstacles presented by the interplay of the two sections or from the evidential presumption established in Section 5851 resulting from proved possession. Our prior decisions dealing with the similar statutory presumption set out in 21 U.S.C. § 174, relating to the importation of narcotic drugs, demonstrate that such

rels of less than 18 inches in length, or a rifle having a barrel or barrels of less than 16 inches in length, or any weapon made from a rifle or shotgun (whether by alteration, modification or otherwise) if such weapon as modified has an overall length of less than 26 inches, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person * * *." (As amended Sept. 2, 1958, Pub.L. 85–859, and June 1, 1960, Public Law 86–478).

3. "§ 5841. *Registration of persons in general.* Every person possessing a firearm shall register, with the Secretary or his delegate, the number or other mark identifying such firearm, together with his name, address, place where such firearm is usually kept, and place of business or employment, and, if such person is other than a natural person, the name and home address of an executive officer thereof. No person shall be required to register under this section with respect to a fire-

arm which such person acquired by transfer or importation or which such person made, if provisions of this chapter applied to such transfer, importation, or making, as the case may be, and if the provisions which applied thereto were complied with."

4. Count 2 of the information, upon which appellant's conviction rests, charged: "That ARTHUR ALONZO MARES, on or about the 13th day of May, 1962, at the City and County of Denver, in the State and District of Colorado, did unlawfully have in his possession a certain firearm, to-wit: a Winchester, Model 37, 20 gauge shotgun, no serial number, with a 9½ inch barrel, a sawed-off stock, and a metal pistol grip forestock, which firearm was made in violation of Title 26 U.S.C. Section 5821, all in violation of Title 26 U.S.C. Section 5851." Another count made reference to Section 5841, but the trial court set aside the conviction as to the latter count and it is of no concern here. . . . .

presumptions constitutionally and reasonably may be accorded effect in the absence of satisfactory explanation by the defendant. Lucero v. United States, 311 F.2d 457 (10th Cir., 1962); Cordova v. United States, 303 F.2d 454 (10th Cir., 1962); Griego v. United States, 298 F.2d 845 (10th Cir., 1962); see also Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925).

The final contention to be considered is that the shotgun in question was illegally seized and that the defendant's motion to suppress the evidence should have been granted.

There was evidence at the special hearing on this motion tending to prove these facts: At about 1:30 a. m. on May 13, 1962, appellant Mares and a companion were walking down Grant Street near 19th Street in Denver, Colorado. There had been a series of robberies in this immediate area and at about the same time of the night. The perpetrators were reported to have been two young men whose descriptions fitted those of the defendant Mares and his companion. Police officers in an unidentified police cruiser approached for the purpose of questioning them. Both men admitted that they recognized the occupants of the car as members of the police force. The officers called for the men to stop, but they ran away. As they ran, out of the trench coat worn by appellant's companion dropped an object which turned out to be a 410 gauge sawed-off shotgun. The officers jumped from the car and shouted to the men that they were under arrest. Both thereupon were captured and placed under arrest. An object which actually was the 20 gauge sawed-off shotgun was felt first under appellant's coat by the arresting officer. This firearm as he moved toward the police car dropped from appellant's person to the ground.

Since the firearm, although not specifically identified, initially was felt on appellant's person by the officer following the arrest, we shall assume that its seizure was a product of the arrest. Cf. Trujillo v. United States, 294 F.2d 583 (10th Cir., 1961), and McLester v. United States, 306 F.2d 880 (10th Cir., 1962).

██ It is firmly established that a search incident to a valid arrest is lawful. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). The circumstances of the moment were sufficient to establish in the mind of a reasonably prudent police officer that the defendant had committed a felony[5] and to lead him to attempt an arrest. It really appears that the position of the officers involved would not have been tenable if they had made no effort to do so. Whether measured by tests established in the Colorado law for arrest without a warrant[6] or by constitutional or other federal standards,[7] we believe that the trial court was justified in concluding that the arrest of appellant was lawful and that therefore the search was lawful. Green v. United States, 104 U.S.App.D.C. 23, 259 F.2d 180 (D.C.Cir.1958) is nearer the mark than such cases as Collins v. United States, 289 F.2d 129 (5th Cir., 1961), and James v. United States, 280 F.2d 443 (8th Cir., 1960), upon which appellant strongly relies. Here, unlike the respective situations of the two cases last cited, the search was made forthwith upon the strength of the arrest, and there was reasonable ground under federal as well as state standards governing arrests for felonies. We consider it unnecessary to determine whether, as argued by the

5. See Dixon v. United States, 111 U.S. App.D.C. 305, 296 F.2d 427 (D.C.Cir. 1961).

6. Colorado Revised Statutes (1953) 1960 Permanent Supplement, 39-2-20. See United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

7. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); 18 U.S.C.A. § 3052. See Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), and Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960).

government, there could have been additional justification for an arrest for a misdemeanor under the local ordinance concerning vagrancy;[8] it is doubtful that the arrest was made with that offense in mind.

Affirmed.

8. See Dominguez v. City and County of Denver, 147 Colo. 233, 363 P.2d 661 (1961).