**Norman Gene SIPES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17221.**

United States Court of Appeals Eighth Circuit.

July 17, 1963.

Certiorari Denied Nov. 12, 1963. See 84 S.Ct. 208.

———————◆———————

Roger Milo Hibbits (court-appointed) St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., made oral argument for appellee and filed brief with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and YOUNG, District Judge.

BLACKMUN, Circuit Judge.

Norman Gene Sipes, 18 years of age, was charged by information with having in his possession in St. Louis on July 13, 1962, in violation of 26 U.S.C. § 5851, a certain firearm, with a barrel less than 16 inches in length, made in violation of § 5821. Sipes has been represented by court appointed counsel since the issuance of that information. In the manner prescribed by Rules 7(b) and 23(a), F.R.Cr. P., he waived indictment and trial by jury. He entered a plea of not guilty. He was convicted by the court and sentenced for treatment and supervision under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b). Defense motions to dismiss the information and for judgment of acquittal were appropriately made but were denied by the court.

With leave of the district court, the defendant appeals in forma pauperis. The complete transcript has been provided at government expense. The defense asserts here, as it did in the trial court, that § 5851 is violative of rights guaranteed by the Tenth, Fifth, and Sixth Amendments to the Constitution, and that the evidence is insufficient to show that the weapon in question was a firearm within the meaning of the statute.

*The statute.* The National Firearms Act, 26 U.S.C.A. §§ 5801–5862, as amended, is a part of the Internal Revenue Code of 1954. The original Act, that of June 26, 1934, Pub.L. 73–474, ch. 757, 48 Stat. 1236, was similarly codified as §§ 2720–2733 of the 1939 Code. The present Act includes in its definition of a firearm "a rifle having a barrel * * * less than 16 inches in length"; a rifle is defined to mean "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder". § 5848. Except for stated exemptions, a license tax is imposed annually upon each importer, manufacturer and dealer in firearms, § 5801, and an excise tax is imposed "on firearms transferred in the United States", § 5811, and "upon the making in the United States of any firearm (whether by manufacture, putting together, alteration, any combination thereof, or otherwise)", § 5821. Unless certain other provisions of the Act have been complied with, every person "possessing a firearm" is required to register its number or other identifying mark and certain personal information. § 5841. Section 5851, which is vital here, reads:

"It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of sections 5811 * * * or which has at any time been made in violation of section 5821, or to possess any firearm which has not been registered as required by section 5841. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of such firearms, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains

such possession to the satisfaction of the jury."

The phrase "or to possess any firearm which has not been registered as required by section 5841" was added to the statute in 1958 by Pub.L. 85–859, § 203(h) (2), 72 Stat. 1428.

*The facts.* The facts, except possibly with respect to scienter, are not in dispute. Young Sipes was seen about 11:15 P.M. on July 13, 1962, by two officers of the St. Louis Police Department. He was running and had the weapon in question in his possession. It was a .22 of Stevens manufacture. It possessed a cocking lever which was not in the condition in which it was originally manufactured. The weapon had a cartridge in its chamber when it was taken from Sipes. Its barrel measured no more than 14½ inches. An officer of the St. Louis police laboratory testified that he fired the gun successfully on his first attempt; that its lever pin and spring were missing; that the weapon was not in its normal condition; that it nevertheless could be operated by pulling back on the hammer; that "there would certainly be no problem in firing it"; that there were no front or rear sights on the weapon; that he assumed "there [had been] a sight on the end of the barrel"; that there was no advantage in firing the weapon from the shoulder; and that it could be fired from the hand as well as from the shoulder. Sipes had not filed a declaration of intent to make this firearm, as contemplated by § 5821(e), and the weapon had not been registered.

Sipes testified that he had had possession of a weapon which looked like the one the prosecution introduced in evidence; that he found it "when it was buried"; that this was on July 8 or 9, 1962; that he did not know it was an "illegal weapon" or that he was violating the law when he had it or that there was a tax or registration which was required or that the gun was made in violation of any statute; that he had attempted to fire it but was not successful because it had no firing pin; that he put a shell in the gun and pulled the trigger but the gun did not fire; that he did not attempt to fire it again; that the firing pin "would be here where the nail is"; and that the nail in the weapon "as it is now * * * is as the firing pin".

*The Tenth Amendment.* The defense position as to the reservation of powers clause is not an unfamiliar one. It is argued that the Act, and particularly § 5851 with its reference to § 5821, is an unconstitutional attempt by Congress to regulate under the guise of a revenue measure an activity, namely, the regulation of firearms, which is reserved to the states; that the Act was not meant to raise revenue; that the tax imposed upon "the making" of a firearm is greater than the cost of a .22 rifle; that this demonstrates that the tax is an absolute prohibition against the owner "from making the highly penal modification" of sawing off the barrel; that the motives of Congress with respect to this legislation are not hidden; that in 1960, in connection with Pub.L. 86–478, 74 Stat. 149, which amended the Act, Congress clearly acknowledged its motives and primary purpose:

"The primary purpose of [the original 1934 Act] was to make it more difficult for the gangster element to obtain certain types of weapons. The type of weapon with which these provisions are concerned are the types which it was thought would be used primarily by the gangster-type element. * * * The purpose of this was, of course, to include within the category of weapons subject to these taxing and control provisions the sawed-off shot guns and sawed-off rifles likely to be used by the gangster element. * * *" Senate Report No. 1303, 86th Cong., 2d Sess., 1960–1 C.B. 848, 849–50, U.S. Code Congressional & Administrative News, 1960, pp. 2111, 2112–13; and House Report No. 914, 86th Cong., 2d Sess.;

that the carrying of concealed weapons is a matter the states have controlled through legislation for many years [see, for example, V.A.M.S. § 564.610]; that

amendments to the statute indicate that revenue is not a consideration; that there was no way for this appellant to pay the "making" tax; and that the statutory provisions are "extraneous to any tax need".

So far as this issue is concerned, we find ourselves again in the not uncommon situation where this court, as an inferior federal court and at a late date, has little room in which to move. The same arguments have already been made to the Supreme Court and have been decided adversely to the defense. In Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772 (1937), the Court passed upon a challenge to the 1934 Act. The report, pp. 507–10, discloses the presence of all the Tenth Amendment, purpose, nonrevenue, proportion-of-tax-to-value, and prohibitive-character arguments. The Court upheld the statute, noted that on its face it was a taxing measure, and said, pp. 513–514 of 300 U.S., p. 556 of 57 S.Ct.:

> "Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any less a tax because it has a regulatory effect * * * and it has long been established that an Act of Congress which on it face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed. * * *

> "Inquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon it is beyond the competency of courts. * * * They will not undertake, by collateral inquiry as to the measure of the regulatory effect of a tax, to ascribe to Congress an attempt, under the guise of taxation, to exercise another power denied by the Federal Constitution."

This approach was reaffirmed in United States v. Miller, 307 U.S. 174, 177–178, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), and with respect to a tax on wagers, in United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953). That there is now an outright manifestation of legislative purpose is not a factor sufficient in itself for a holding of invalidity under the Tenth Amendment. United States v. Kahriger, supra, pp. 27–28 of 345 U.S., pp. 512–513 of 73 S.Ct. "So long as Congress acts in pursuance of its constitutional power, the Judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power". Barenblatt v. United States, 360 U.S. 109, 132, 79 S.Ct. 1081, 3 L.Ed. 2d 1115 (1959); Communist Party of U. S. v. Subversive Activities Control Board, 367 U.S. 1, 86, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961).

We therefore must hold that the statute challenged here continues not to be violative of the Tenth Amendment.

*Self-incrimination and the Fifth Amendment.* The defense argument is that § 5841 (the registration section) violates the Fifth Amendment's guaranty against self-incrimination; that this section was held unconstitutional in Russell v. United States, 306 F.2d 402 (9 Cir. 1962); that the present form of the statute, in contrast to § 16 of the 1934 Act, contains no separability provision; that only in 1958 was § 5851 amended to include a reference to § 5841; that this addition is necessarily invalid if Russell is to be followed; that the purpose of that amendment was to clarify the law, citing Senate Report No. 2090, 85th Cong., 2d Sess., U.S.Code Congressional & Administrative News, 1958, pp. 4395, 4604; and that Congress is obviously not content with § 5851 when the invalid reference to § 5841 is eliminated.

In the Russell case the Ninth Circuit held (a) that the information there, in alleging a violation of § 5851 by failing to register, did not charge a crime because that section, as it read in 1956 at the time of that alleged offense, made no reference to § 5841; (b) that it did charge a crime under § 5841; and (c) that § 5841 abridged the privilege against self-incrimination because it forced one

178

to admit that he was in unlawful possession of a firearm transferred or made in violation of the Act. The Kahriger case, supra, and another wagering case, Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), were distinguished on the ground that the registration provisions of the wagering tax statute were not unconstitutional because the privilege against self-incrimination has no relation "to future acts that may or may not be committed", p. 32 of 345 U.S., p. 515 of 73 S.Ct. It was said, p. 410 of 306 F.2d, that, on the contrary, § 5841 required the defendant "to provide information as to past conduct (or present status) which was actually or presumptively unlawful".

We need not pass, as the Ninth Circuit was compelled to do, upon the constitutionality of § 5841. Cf. Page v. United States, 282 F.2d 807, 810–811 (8 Cir.1960). No violation of that section is charged by the information against Sipes. What is charged here is a violation of § 5851 in the possession of a firearm made in violation of § 5821. The sufficiency of this charge is intimated in Russell itself, pp. 406–407 of 306 F.2d, and footnote 11, and it certainly may be said that the court in that case did not hold that there could be no conviction under § 5851 without a violation of the Fifth Amendment. Furthermore, the Ninth Circuit, since Russell and since the conviction in the present case, now has twice upheld a conviction under § 5851 for possession of an unregistered firearm and has concluded that there was no Fifth Amendment violation. Frye v. United States, 315 F.2d 491, 492, 494 (9 Cir. 1963), and Starks v. United States, 316 F.2d 45 (9 Cir. 1963). In the latter case it was said, p. 46 of 316 F.2d "It is the possession of a gun that no one has registered, not the failure by appellant to register, that is the essence of the offense with which appellant was charged in this case". The author of both of these opinions, Judge Duniway, was a member of the court which decided Russell.

If the Ninth Circuit is correct in this analysis—and it seems to us that it is—it follows, a fortiori, that any defect which might be present in § 5841 does not render a charge under § 5851 and directed to § 5821 violative of the Fifth Amendment. We so hold.

The suggestion as to the absence of a separability clause is answered by the presence of the general clause in § 7852(a) applicable to the entire 1954 Code. The historical note appended to 26 U.S.C.A. § 7852(a) contains a specific reference to § 16 of the 1934 Act. In any event, various sections of the Act specify separate and distinct offenses. United States v. Hardgrave, 214 F.2d 673 (7 Cir. 1954); Crapo v. Johnston, 144 F.2d 863 (9 Cir.1944), cert. denied 323 U.S. 785, 65 S.Ct. 267, 89 L.Ed. 626; Fleish v. Johnston, 145 F.2d 16 (9 Cir.1944), cert. denied 324 U.S. 840, 65 S.Ct. 587, 89 L.Ed. 1402; Montgomery v. United States, 146 F.2d 142 (4 Cir.1944). Cf. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

*The sufficiency of the evidence.* The defense argues here that the information charges possession of a rifle; that "rifle" is defined by § 5848(3) to mean a weapon "designed or redesigned, made or remade, and intended to be fired from the shoulder * * *"; that this weapon had no sight at either end of its barrel; that there was no advantage in firing it from the shoulder; that the recoil of a .22 is not sufficient to require placing against the shoulder; and that it could be fired from the hand.

This argument does not convince us. The weapon itself was in evidence and revealed its true nature. That it had no sights or that it could be fired elsewhere than from the shoulder makes it no less a rifle within the statutory definition. It has been said that a weapon without a firing pin is not a firearm. United States v. Thompson, 202 F.Supp. 503, 507 (N.D.Cal., 1962). We do not decide that question. Although Sipes testified that when he found the weapon it had no firing pin, he also conceded that the nail in the weapon at the time of trial was the firing pin. And there is

testimony that the weapon at the trial was in the same condition as when it was taken from Sipes and that it was successfully fired in that condition. It qualifies as a rifle and as a firearm.

*Scienter and the Fifth and Sixth Amendments.* The defense points out that § 5851 sets forth no exemptions from its description of unlawful possession other than what may be included in the section's last sentence. It is then argued that that sentence constitutes an improper delegation to the jury of the power to determine which type of possession is criminal; that the statute is vague and does not enable a defendant to know the nature of the charge against him; that there was no showing of knowledge on the part of Sipes; that scienter is a vital element in our criminal law; and that, if the statute does not require scienter, we have a situation where rights guaranteed under the Fifth and Sixth Amendments are violated.

The government's response is that the gist of the crime is possession; that intent to possess is the vital element; that intent to possess and knowing possession are established by the evidence here; that any broader intent is not an element of the crime; and that, in any event, the fact of conversion of the weapon into a firearm by the insertion of the nail as a firing pin while the weapon was in Sipe's possession provides sufficient proof here of scienter.

■ We had occasion recently, in Holdridge v. United States, 282 F.2d 302, 308–310 (8 Cir.1960), to consider criminal intent as a necessary factor in federal crime. That discussion need not be repeated here. We note it has been said flatly that "scienter is not involved" with respect to §§ 5851 and 5841. United States v. Decker, 292 F.2d 89, 90 (6 Cir. 1961), cert. denied 368 U.S. 834, 82 S.Ct. 58, 7 L.Ed.2d 36. To the same effect is United States v. Wost, 148 F.Supp. 202, 204 (N.D.Ohio, 1957). But we need not go so far. What is charged by the information against Sipes is possession of a firearm made in violation of § 5821.

There can be no question that the defendant's possession of the weapon was a knowing one. Hill v. United States, 294 F.2d 562 (8 Cir.1961). He said he found it and possessed it for several days. It was in his hands when the arresting officers took it from him. He knew it was a gun. His possession therefore was a knowing possession. This is all the scienter which the statute requires. It is not necessary that, in addition to knowing possession, there also be knowledge on the defendant's part that it was made in violation of § 5821. Hazelwood v. United States, 208 F.Supp. 622 (N.D. Cal.1962); United States v. Mares, 208 F.Supp. 550 (D.Colo.1962). In any event, the inference that Sipes inserted the nail is proper and creates a knowing "making" on his part.

This leaves only the last sentence of § 5851 which merits further comment. Admittedly, the presence of language of this kind in a criminal statute is likely to raise questions in a lawyer's mind. The courts, however, have held that this sentence does not relieve the government of proving all the elements of the claimed offense, and that it encompasses no more than a rule of evidence which comes into effect once possession has been shown. Frye v. United States, supra, p. 494 of 315 F.2d; Starks v. United States, supra, p. 46 of 316 F.2d; United States v. Decker, supra, p. 91 of 292 F.2d.

■ This statutory presumption has its counterpart in other statutes. These have been upheld against constitutional attack where there is a rational connection between the facts proved and the fact presumed. See, for example, § 2(c), (f) and (h) of the Narcotic Drugs Import and Export Act, 21 U.S.C.A. §§ 174, 176a, upheld in such cases as Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); United States v. Gibson, 310 F.2d 79, 81 (2 Cir. 1962); and Vick v. United States, 113 U.S.App.D.C. 12, 304 F.2d 379, 380 (D.C. Cir.1962), and § 4704(a) of the Internal Revenue Code of 1954, upheld in an earlier form in Casey v. United States, 276 U.S. 413, 418, 48 S.Ct. 373, 72 L.Ed. 632

180

(1928), and in Gonzales v. United States, 162 F.2d 870 (9 Cir. 1947). However, in Tot v. United States, 319 U.S. 463, 467–468, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), similar language in § 2(f) of the Federal Firearms Act, 15 U.S.C.A. § 902 (f), was held unconstitutional because of the absence of such rational connection "in common experience". Among other instances of statutory language of this type are 21 U.S.C.A. § 176b (sale of heroin to juveniles); 21 U.S.C.A. §§ 178, 181 and 188m (opium); 26 U.S.C.A. § 4744(a) (possession of marihuana); 26 U.S.C.A. § 5681(d) (posting liquor business signs); 26 U.S.C.A. § 5691(b) (sale of liquors in excess of given quantity); 26 U.S.C.A. § 5601(b) (presence at illegal liquor production site).

We agree with the conclusions reached by the Ninth and Sixth Circuits in the Frye, Starks and Decker cases, supra, and conclude that § 5851 in this respect is controlled by Yee Hem and Casey, rather than by Tot.

While, as the trial court noted, questions may possibly be posed as to the constitutional uncertainty of § 5851, we are not inclined upon our foregoing analysis of the statute, any more than the district court was, to conclude that the section on its face is clearly unconstitutional. Some of the questions which bothered the trial court here, in the light of the Russell case, have perhaps been set at rest by the Frye and Starks cases, decided since Sipes was convicted. In Page v. United States, supra, in a somewhat different context, this court observed that sawed-off shotguns were "useless for any lawful purpose". The same observation applies to a sawed-off rifle of the kind possessed by Sipes. We say again, as we said in Page, p. 811 of 282 F.2d, "If the Act, in so far as applicable here, is to be declared invalid, that should, we think, be done by the Supreme Court on certiorari * * *."

We are grateful to Mr. Roger Milo Hibbits of the St. Louis bar who was appointed by the district court to represent the defendant at his trial and on his appeal. Mr. Hibbits has given the defendant most adequate representation and has been of great assistance to us.

Affirmed.