**UNITED STATES of America,**
**Plaintiff,**

v.

**Darryl Lee CASSON, Defendant.**

**Crim. A. No. 1890.**

United States District Court
D. Delaware.
June 26, 1968.

Alexander Greenfeld, U. S. Atty., and L. Vincent Ramunno, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Melvyn A. Woloshin, Michlin & Woloshin, Wilmington, Del., for defendant.

## OPINION

STEEL, District Judge:

Defendant is charged in a one-count information with the unlawful possession of a firearm (sawed-off shotgun), as defined in 26 U.S.C. § 5848(1) (1964), in violation of § 5851. The alleged dimensions of the gun which defendant is charged with possessing meet the definition of a firearm under 26 U.S.C. § 5848(1). This section forms part of the National Firearms Act, an interrelated statutory scheme for the taxation of certain classes of firearms, which is described in detail in Haynes v. United States, 390 U.S. 85, 87–89, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

The information alleges that defendant's possession of the shotgun was unlawful under § 5851 [1] because (1) the gun was made in violation of § 5821, since the tax incident to its manufacture had not been paid and no declaration of intention to manufacture it had been filed with the Secretary of the Treasury, and (2) the gun was transferred in violation of §§ 5811 and 5814, since the tax on the transfer had not been paid, and no transfer order had been submitted to the Secretary of the Treasury or his delegate.[2]

---

[1]. Section 5851 reads in part:
"It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of section 5811, 5812(b), 5813, 5814, 5844, or 5846, or which has at any time been made in violation of section 5821, or to possess any firearm which has not been registered as required by section 5841."

[2]. It appearing to the Court that the information might be alleging in one count more than one offense and hence be duplicitous, it issued, sua sponte, on June 11, 1968 an order to show cause why the information should not be amended so as to state the offense charged in separate counts. In view of defendant's objection and the doubts entertained by the Court whether the information was

Defendant has moved to dismiss the information. He makes no contention that the tax imposed upon the making of a firearm or upon its transfer is not a valid exercise of the Federal taxing power. Nor does he contend that any of the provisions here involved constitute an infringement by the Federal Government on the police powers reserved by the states by the Tenth Amendment. His sole claim is that §§ 5811, 5814 and 5821 violate the Second Amendment and the immunity from self-incrimination clause of the Fifth Amendment.

The Second Amendment provides:

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

In the absence of some showing that the possession or use of the shotgun bears some reasonable relationship to the preservation or efficiency of a well regulated Militia, the Second Amendment does not guarantee defendant the right to keep and bear such a firearm. United States v. Miller, 307 U.S. 174, 178, 59 S.Ct. 816, 83 L.Ed. 1206 (1939). Defendant seemingly recognizes the inapplicability of the Second Amendment for his brief is devoid of any contention based upon it.

The burden of defendant's argument is that compliance with sections 5821, 5811 and 5814 would violate his Fifth Amendment privilege against self-incrimination. This argument rests solely upon the decision in Haynes v. United States, supra.

In *Haynes* the defendant was convicted under § 5851 for knowingly possessing a firearm which had not been registered as required by § 5841. The Supreme Court set aside the conviction

upon the ground that § 5851, by making it a crime to possess an unregistered firearm in violation of § 5841, infringed the defendant's self-incrimination protection of the Fifth Amendment. The Court recognized that registration under § 5841 was not invariably indicative of a violation of the other requirements of the Act, and that there might be "uncommon" situations, such as that of a finder of a lost firearm, in which a registrant might not be guilty of violating other provisions of the Act. The Court added at 390 U.S. p. 97, 88 S.Ct. p. 730:

"Nonetheless, the correlation between obligations to register and violations can only be regarded as exceedingly high, and a prospective registrant realistically can expect that registration will substantially increase the likelihood of his prosecution. Moreover, he can reasonably fear that the possession established by his registration will facilitate his prosecution under the making and transfer clauses of § 5851."

The reason why the "correlation between obligations to register and violations" of the Act was said to be "exceedingly high" is clear. Section 5841 which requires registration by one in possession of a firearm contains the following exemption:

"No person shall be required to register under this section with respect to a firearm which such person acquired by transfer or importation or which such person made, if provisions of this chapter applied to such transfer, importation, or making, as the case may be, and if the provisions which applied thereto were complied with."

Possession of an unregistered firearm is not unlawful under § 5841 unless the firearm had been transferred,

---

in fact duplicitous, no amendment was required. See order dated June 17, 1968. The subject "Duplicity; Question of One or More Offenses Being Involved" is discussed in 11 Cyclopedia of Federal Procedure § 42.106 et seq. (1963). See also, United States v. Forys, 113 F.Supp. 580 (D.R.I.1953); United States v. Hardgrave, 214 F.2d 673 (7th Cir. 1954).

imported or made in violation of other sections of the Act. "The registration requirement is thus directed principally at those persons who have obtained possession of a firearm without complying with the Act's other requirements, and who, therefore, are immediately threatened by criminal prosecution under sections 5851 and 5861." Haynes v. United States, supra, p. 96, 88 S.Ct. p. 730. The registration of a firearm demanded by § 5841, therefore, carries with it a *prima facie* admission by the registrant that he has committed a crime by failing to comply with some other provision of the law. The Court in *Haynes* understandably said that a prospective registrant under § 5841 "realistically can expect that registration will substantially increase the likelihood of his prosecution." (p. 97, 88 S.Ct. p. 730).

Whether the rationale of *Haynes* has relevance to the present case requires an analysis of § 5851 as it relates to the charge directed against defendant. The elements of illegality under § 5851 are: first, the receipt or possession of a firearm, and second, a violation of certain other sections specified in § 5851.

 The present information charges defendant with the unlawful possession (not receipt) of a firearm in violation of three of the sections specified in § 5851, viz. §§ 5811, 5814 and 5821. Although violations of these three sections are alleged in the conjunctive, proof of a violation of any one of them, United States v. Wells, 180 F.Supp. 707, 709 (D.Del.1959), coupled with proof of defendant's possession of the firearm, is sufficient to sustain a conviction. Possession of the firearm plus a violation of either § 5811, § 5814, or § 5821, are indispensible ingredients of the crime defined in § 5851 and charged in the information.

 *Haynes* is patently inapposite to the charge based upon defendant's possession plus noncompliance with § 5821. In *Haynes* the underlying offense charged was the possession of a firearm which had not been registered as required by § 5841. Here, defendant is accused of possessing a firearm which was made in violation of § 5821. As previously noted, registration under § 5841 would have been a strong indication of a criminal violation by Haynes of one or more other sections of the Act; hence, the real and likely danger of self-incrimination which compliance with § 5841 would entail. On the other hand, compliance with § 5821 would have carried with it no suggestion of guilt on the part of defendant. This is true regardless of whether the gun had been made by defendant or by someone else.

Section 5821 imposes a tax upon the making of any firearm to be paid by the maker in advance of the making, and requires a prospective maker to declare in writing, in such form as the Secretary of the Treasury or his delegate may prescribe, his intention to make the firearm. If he is an individual the declaration must include his fingerprints, a photograph and a certificate of the chief of police or other acceptable person, certifying that the fingerprints and photograph are those of the declarant and that the firearm is intended by such person for lawful purposes. 26 C.F.R. § 179.78.

If the defendant was the maker of the gun, no past or present incriminating implication could flow from his compliance with § 5821. The filing of a declaration of an intention to make a firearm and the payment of a tax thereon precedes its making. The firearm may not be made unless and until the action has been approved by the Director, Alcohol and Tobacco Tax Division. 26 C.F.R. § 179.79. Compliance with § 5821, therefore, establishes the legality, rather than illegality, of possession of a firearm. Mares v. United States, 319 F.2d 71, 73 (10th Cir. 1963). Although *Mares* was decided prior to *Haynes*, it recognizes that the constitutional problems involved in an attack upon § 5841— the section fundamentally involved in *Haynes*—are foreign to those relating to § 5821. 319 F.2d at 73. This is like-

wise true in Sipes v. United States, 321 F.2d 174, 178 (8th Cir.), cert. denied, 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150 (1963).

Section 5851 makes it unlawful for any person to possess a firearm which has "at any time" been made in violation of § 5821. If the gun was made prior to defendant acquiring it, the offense was complete as soon as defendant received it. No compliance with § 5821 by the maker could have amounted to an incriminating act on the part of the defendant.

■■ It can be argued that compliance with § 5821 by the filing of an intention to make a firearm might provide a clue leading to the arrest and conviction of a declarant if a crime were later committed by the use of the firearm identified in the declaration. The constitutional protection is, of course, applicable to future crimes as well as to past or present ones. The central standard for the application of the privilege to either is whether the person claiming the privilege is confronted with substantial and real, not merely trifling or imaginary, hazards of incrimination. Marchetti v. United States, 390 U.S. 39, 52–53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

Here, defendant makes no claim to any substantial or real apprehension that his compliance with § 5821 will tend to incriminate him in the future. Nor does the record reveal any basis for such a claim other than the mere fact that the National Firearms Act is directed at a highly selective group inherently suspect of criminal activities. Compare Haynes v. United States, supra, 390 U.S. at 98, 88 S.Ct. 722, 19 L.Ed.2d 923. At best this provides one who complies with § 5821 only with a risk of incrimination under § 5851 which is speculative and unsubstantial. Under *Marchetti* this is not enough.

■ On its face § 5821 runs afoul of no constitutional requirement. Nor is it apparent from the present record how that section in its application to defendant can tend to incriminate him. If during the trial circumstances should develop which under some theory not presently envisaged indicate that compliance with the section might subject defendant to real and substantial hazards of self-incrimination, he may then reassert its constitutional infirmity. For the present the claim is untenable.

■ As a final contention the defendant argues that the last sentence of § 5851 is unconstitutional. It reads:

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury."

Defendant's argument is premature. It presupposes that the Government may secure a conviction of defendant by proof of possession and nothing more. Whether it will do so cannot be ascertained at this juncture. If it should, then defendant may challenge its constitutionality by a motion for an acquittal or in any other appropriate way.

■ The question of severability of the part of § 5851 based upon a violation of § 5811 and § 5814 from the part of § 5851 based upon a violation of § 5821 has not been raised or discussed by the parties. The two portions of the statute would appear to be severable and the constitutionality of each turn upon independent considerations. Such is the plain implication of *Haynes*.

The motion of defendant to dismiss the information is denied, without prejudice to the right of the defendant to raise at any later appropriate time the constitutionality of the statutes involved in the information.