**UNITED STATES of America**

v.

**Clyde Marvin THOMPSON, Jr.,**
**Appellant.**

**No. 18004.**

United States Court of Appeals
Third Circuit.

Argued Nov. 7, 1969.

Decided Jan. 7, 1970.

Thomas Hughes, O'Donnell, Hughes & Lowicki, Wilmington, Del., for appellant.

F. L. Peter Stone, Asst. U. S. Atty., Wilmington, Del., for appellee.

Before MARIS, SEITZ and STAHL, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

The defendant, Clyde Marvin Thompson, Jr., appeals from a judgment of the District Court for the District of Delaware adjudging him guilty of unlawfully possessing, in violation of 26 U.S.C. § 5851, a sawed-off shotgun which had been made in violation of 26 U.S.C. § 5821.

Prior to trial the defendant filed two motions: one, to suppress evidence on the ground that the shotgun was the fruit of a search incident to an unlawful arrest, and, the other, for dismissal of the indictment on the ground that 26 U.S.C. § 5851 violates the defendant's constitutional rights against self-incrimination. For the purposes of the district court's consideration of defendant's motion to suppress evidence, counsel for the Government and the defendant stipulated that the facts surrounding the defendant's apprehension should be determined from the information contained in the police report of November 22, 1967, the day of arrest, which was filed by the arresting police officers. The District Court, in a well-considered and thoughtful opinion by Judge Latchum, denied both motions. 292 F.Supp. 757. The defendant waived trial by jury.

From the testimony offered at the trial, it appears that at about 5:30 A.M. on the morning of November 22, 1967 in Wilmington, Delaware, the defendant was seen by Patrolmen William G. Hedrick and Raymond M. LeHowit, officers of the Wilmington Bureau of Police, under circumstances which aroused their suspicions. As they were cruising in a police-van past an Atlantic gasolene station, which was open and attended by one man, they saw an automobile parked in "sort of a strange way" in that the automobile was not located near the gasolene pumps, the motor was running, and the defendant was not making any attempt to get gasolene or to use the other facilities of the station. Patrolman LeHowit was driving. His interest aroused, he turned around and parked where the police officers could observe the station. They saw the defendant jump into the automobile and drive out of the station, driving east on a street which was restricted to west-bound traffic for about 75 feet. They followed the defendant for about half a mile before he was stopped. They had observed that there were bullet holes in the windshield which were stuffed with paper and that the automobile had a loud muffler. In the meanwhile, Patrolman Hedrick informed Patrolman LeHowit that he recognized the defendant and knew that he had no operator's license because he had been arrested about two weeks previously for not having such a license.

It was the policy of the police department for police officers not to stop an automobile without assistance during the midnight to 8 A.M. shift, so Patrolman LeHowit radioed for assistance, giving their location. Sergeant Lawrence M. Curtis answered the call. The defendant was directed to pull over to the south side of the street; Patrolmen Hedrick and LeHowit parked behind his automobile and approached on the driver's side; Patrolman Hedrick then stood to the left of defendant's automobile, Patrolman LeHowit stood three or four feet behind Hedrick; the defendant remained seated

in the automobile behind the wheel. Sergeant Curtis stopped his automobile in front of the defendant's automobile, alighted and stood beside the door of the defendant's automobile to the front of Patrolman Hedrick.

Patrolman Hedrick asked the defendant for his operator's license and automobile registration card; the defendant produced the registration card and a learner's permit. Patrolman Hedrick testified that he then placed the defendant under arrest for unlawfully driving with a learner's permit unaccompanied by a licensed driver and that he read to the defendant from a white card advising the defendant of the rights available to an arrested person. Patrolman LeHowit testified that although he could not hear, he knew that an arrest had been made when he saw Patrolman Hedrick pull out the white card. At that time Patrolman Hedrick saw the defendant's right hand reach between his legs down under the seat of the automobile and saw the butt end of a rifle being pulled from beneath the seat. Patrolman Hedrick yelled to Sergeant Curtis, who was standing next to the door handle, "Watch him, he is going for something." Sergeant Curtis opened the automobile door, grabbed the defendant's left arm and pulled him out of the automobile. Patrolman Hedrick reached in and brought out a sawed-off shotgun and a shell from under the front seat. The firearm was a double barreled, 12 gauge, sawed-off shotgun, the safety was off, and it was ready to be fired. The shotgun was 25 inches in length, the barrels 16¼ inches in length. The unspent shell was found on the floor next to the gun.

The defendant testified in his own behalf. He denied that the police officer had read to him from a card; he denied that he had reached for the weapon stating that he had his wristwatch on the seat beside him; that on being advised that he was under arrest he knew that the automobile would be towed away so he reached for his watch and that the police officers were under the impression that he was reaching for the weapon; and that it was too dark for the police officers to have been able to see the weapon under the seat.

Following the close of all evidence, the defendant's motion to suppress the evidence was renewed on the ground that the testimony given during the trial was conflicting and inconsistent with that given by the police officers before the United States Commissioner and in their police report. The trial judge, however, denied the motion to dismiss stating that the testimony given during the trial of the case was not so inconsistent with that which he had previously considered in deciding the merits of defendant's motion to suppress evidence as to warrant a change in his previous decision.

On this appeal the defendant's first contention is that the District Court erred in refusing to suppress the evidence obtained by the Wilmington police officers. He argues that the evidence was illegally seized in that the police officers had no probable cause for the arrest.

■■■ It was settled in Carroll v. United States, 1925, 267 U.S. 132, 147, 153, 45 S.Ct. 280, 69 L.Ed. 543 and Brinegar v. United States, 1949, 338 U.S. 160, 164, 69 S.Ct. 1302, 93 L.Ed. 1879, that under the Fourth Amendment, a valid search of a vehicle moving on a public highway may be had without a warrant, with probable cause. One need not have evidence which would justify a conviction; probable cause exists if the facts and circumstances known to the officer would warrant a prudent man in believing that the offense has been or is being committed.[1] On the other hand, probable cause means more than a bare suspicion, the line between mere suspicion and probable cause "must be

---

1. Brinegar v. United States, 1949, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879; Draper v. United States, 1959, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327; Henry v. United States, 1959, 361 U.S. 98, 101–102, 80 S.Ct. 168, 4 L.Ed.2d 134; Beck v. Ohio, 1964, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142.

drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances."[2] Furthermore, where an arrest without a warrant was not made under a federal statute, the validity of the arrest is determined by the law of the state where the arrest took place.[3] The reviewing court must evaluate the individual facts of each case; inquiry must be made as to what objective facts were available to the arresting officers to support a belief that the defendant was engaging in unlawful activity at the time he was arrested—what did they see or otherwise perceive to give them ground for belief that the defendant had acted or was then acting unlawfully.[4]

■ We turn then to the question whether prudent men in the shoes of the police officers in this case would have seen enough to cause them to believe that the defendant was violating the law. It will be recalled that in the dark hours of early morning, the two police officers observed the defendant and his automobile at a gasolene station, which was attended by only one man, in a location which aroused their suspicions. After they turned the police-van around to observe the defendant's action, he jumped into his vehicle and drove in the wrong direction on a one-way street in an automobile which had bullet holes in the windshield and a loud muffler. At that time one officer told the other that he recognized the defendant as having been arrested about two weeks earlier for driving without a license. We think that the defendant's strange actions at the gasolene station, together with the infractions of the Delaware Motor Vehicle Code which the officers observed and their knowledge of defendant's prior arrest for a violation of the code, presented a combination of circumstances which warranted them in stopping the defendant. After having stopped the defendant and upon ascertaining that he was not driving with a lawful driver's license but rather with a temporary instruction permit unaccompanied by a licensed operator in violation of the law, 21 Del.C. §§ 2701, 2708, 2719, the officers had the authority to make the arrest without a warrant for violation of the Motor Vehicle Code of Delaware. 21 Del.C. § 701 (a). We conclude that the District Court rightly held that the arrest of the defendant was lawful under these circumstances.

■ This brings us to the contention of the defendant that the District Court erred in holding that the shotgun which was offered in evidence had been lawfully seized. It is well settled that arresting officers, upon a valid arrest, may seize visible instruments or fruits of crime within the control of the accused; it is unreasonable searches which are prohibited.[5] The reasonableness of the search is in the first instance for the trial court to determine from the facts and circumstances of the case in the light of the fundamental criteria laid down by the Fourth Amendment and in opinions of the Supreme Court applying that Amendment.[6] The Supreme Court has made it clear that a law enforcement officer, when he justifiably believes that the individual he is investigating at close range is armed, has the power for his own protection to take necessary measures to determine whether that person is in fact carrying a weapon.[7] This rule was reaffirmed by the Supreme Court in Chimel v. California, 1969, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 23 L.Ed. 2d 685.

2. Brinegar v. United States, 1949, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879.

3. United States v. Di Re, 1948, 332 U.S. 581, 589–590, 68 S.Ct. 222, 92 L.Ed. 210.

4. Beck v. Ohio, 1964, 379 U.S. 89, 94–96, 85 S.Ct. 223, 13 L.Ed.2d 142.

5. Weeks v. United States, 1914, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652.

6. Ker v. California, 1963, 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726.

7. Terry v. Ohio, 1968, 392 U.S. 1, 24, 88 S. Ct. 1868, 20 L.Ed.2d 889.

In this case, part of the weapon was in open view after the defendant reached between his legs to withdraw it from under his seat. A sufficient part was exposed to alert Patrolman Hedrick to warn Sergeant Curtis. After Sergeant Curtis pulled the defendant from the automobile, Patrolman Hedrick reached in and picked up the shotgun which was visible except for the portion caught under the seat. This search, therefore, fell within the doctrine that police officers, for their own protection or as fruits of an offense, may take possession of weapons found in the possession of an accused, either on his person or within his immediate control. The defendant, however, contends that the testimony of the police officers given at the trial was conflicting as to the length of the visible part and therefore was unworthy of belief. In this regard, the trial judge heard the evidence; he had the duty to decide where the balance of credibility lay. He rejected the defendant's contention that the testimony given during the trial was substantially inconsistent with that which he had previously considered on defendant's motion to dismiss. We have carefully reviewed the testimony given at the trial, as well as the evidence which had been submitted at the pretrial hearing, and conclude that the trial judge was fully justified in finding that the shotgun, under the circumstances of this case, was legally seized.

The defendant's next contention is that the district court erred in refusing to dismiss the indictment on the ground that it charged the violation of a statute compliance with which would have violated his constitutional privilege against self-incrimination. The indictment charged the defendant with possessing a sawed-off shotgun in violation of 26 U.S.C. § 5851 which had been made in violation of 26 U.S.C. § 5821 and transferred in violation of 26 U.S.C. §§ 5811 and 5814. In support of his pretrial motion to dismiss, the defendant had argued that the requirements of the possessing, making, and transferring provisions were substantially the same as the registration provision, 26 U.S.C. § 5841, and therefore within the holding of the Supreme Court in Haynes v. United States, 1968, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923, namely, that a prosecution under § 5851 for possession of a firearm not registered under § 5841 violated the privilege against self-incrimination. The District Court, after considering the defendant's contentions in the light of the Haynes decision, as well as Marchetti v. United States, 1968, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, concluded that the *making* and *transferring* provisions were not substantially similar to the *registration* requirement in their incriminatory effect and that, at the pretrial stage of the proceedings, the offenses charged did not violate the defendant's constitutional right against self-incrimination. 292 F.Supp. at 762–767. At the conclusion of the trial of the case, the District Court found that there was no evidence that the shotgun had been transferred in violation of 26 U.S.C. §§ 5811 and 5814; but the court found the defendant guilty of unlawfully possessing a sawed-off shotgun in violation of 26 U.S.C. § 5851 which had previously been made in violation of 26 U.S.C. § 5821 and entered judgment accordingly.

On this appeal the defendant contends that it is the clear purpose of chapter 53 of title 26, U.S.C., and the regulations promulgated thereunder to force incriminating disclosures by anyone who possesses a sawed-off shotgun and that the statute is directed to a "select group inherently suspect of criminal activities" and violates constitutional rights under the rulings in Haynes, Marchetti, Grosso and Leary v. United States, 1968, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57. The Government, however, urges that those cases are distinguishable and involve factual situations limited to a particular statute, or part of a statute, each decision turning on its own narrow facts, and that the defendant seeks to extend those hold-

ings to cover him in a completely different factual situation. We agree that the defendant seeks to paint with too broad a brush.

The District Court, in considering the defendant's pretrial motion to dismiss, stated that under the cases,[8] it was generally considered that the privilege against self-incrimination was no defense in a prosecution under § 5851 for possessing an unlawfully made gun in violation of § 5821, unless the gun was made in a jurisdiction which prohibited sawed-off shotguns, stating: "in the absence of any possibility of incriminating himself under state law, defendant cannot assert the privilege against self-incrimination as an absolute defense to the charge of possession of an unlawfully made firearm because in that case '[c]ompliance with [§ 5821] * * * establishes the legality, rather than illegality of possession of a firearm' and 'no past or present incriminating implication could flow from his compliance with [§ 5821].' United States v. Casson, * * * 288 F.Supp. 86, 89 (D.Del., filed June 26, 1968)." 292 F.Supp. at 765. The court left open to the defendant to show that compliance with § 5821 might have subjected him to real and substantial hazards of self-incrimination in that he, himself, made the gun and did so in a state which at the time prohibited such weapons and provided criminal sanctions. No such evidence was offered by the defendant during the trial, however. The Government points out that such a weapon as the defendant possessed is legal in Delaware where it was possessed and seized. No evidence was offered by the defendant during the trial indicating that it was made in any other state.

■■■■ The defendant here contends that the District Court wrongly placed upon him the burden of showing that his weapon had been made in a jurisdiction where the law provided criminal sanctions. It is settled that where compliance with a federal statute would result in an admission of the commission of an offense under state law, the privilege against self-incrimination may be raised as a constitutional defense to prosecution for violation of the federal statute. Of course, this constitutional issue may be raised on pretrial motion to dismiss and where the indictment on its face charges the violation of a statute, compliance with which would result in an admission of an offense under state law, the defendant is entitled to have the indictment dismissed for constitutional infirmity. We cannot follow the defendant's argument that a greater burden was imposed upon him when the District Court, holding that the indictment on its face did not charge such an offense, stated that if during the trial evidence should show that compliance with § 5821 would have subjected the defendant to the hazards of self-incrimination, the claim of constitutional infirmity might then be reasserted. The defendant's complaint here is that testimony by him that he had made the weapon in a state where its making or possession was illegal would of itself incriminate him of a violation of state law. But the privilege against self-incrimination is a personal one. Evidence from other witnesses to the same fact would, therefore, appear not to have been subject to the same constitutional objection and might have been offered if the defendant desired to do so. Moreover, the burden placed upon the defendant at the trial in this regard was no greater than that which he was required to bear in sustaining his pretrial motion to dismiss the indictment. In either case he was required to establish, in whatever way he thought best, that he had made the weapon in a state where its possession was illegal. We accordingly see no merit in this contention. We note, moreover, that the defendant made no further suggestion during or after the trial that

8. United States v. Casson, D.Ct.Del.1968, 288 F.Supp. 86; United States v. Taylor, D.Ct.Wis.1968, 286 F.Supp. 683; Sipes v. United States, 8 Cir.1963, 321 F.2d 174, cert. den. 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150; Mares v. United States, 10 Cir. 1963, 319 F.2d 71.

he desired to attack the indictment on the ground that the weapon was made by him in a state where its making or possession would have been illegal so that compliance with § 5821 would have involved self-incrimination.

The defendant also urges that the indictment against him involved self-incrimination under 15 U.S.C. § 902 (f) which makes it unlawful for one who has been convicted of a felony, as the defendant had been, to receive a firearm which has been transported in interstate commerce. It is true, as the defendant points out, that this statute makes possession presumptive evidence of transportation or receipt. But if we were to accept defendant's doubtful premise that 15 U.S.C. § 902(f) supplies the missing element of an applicable state statute making possession of a sawed-off shotgun illegal, defendant nevertheless would not be entitled to dismissal of the indictment since he did not attempt to show that he was the one who made the shotgun in violation of § 5821.

Prior to the Haynes decision, those courts which had occasion to consider whether the *making* provision, § 5821, violated the Fifth Amendment, found it did not violate the privilege against self-incrimination.[9] Following the Haynes decision, it has been held that, notwithstanding the infirmity of § 5841 as incorporated into § 5851, §§ 5851 and 5821, as they operate together, are not violative of Fifth Amendment rights.[10] In this regard, we are wholly in accord with the reasoning of the Court of Appeals in United States v. Benner, 9 Cir. 1969, 417 F.2d 421, 423, which stated:

"Prior to *Haynes*, it was uniformly held that the Fifth Amendment was not violated by the provisions of § 5851 dealing with possession of firearms which had been illegally made under § 5821[8] and the same result was reached in cases involving the illegal transportation of firearms in interstate commerce in violation of § 5855[9]. *Haynes* did not deal with the interrelationship of §§ 5821 and 5851, and the Court of Appeals decisions quoted in footnote 8[11] remain as authority (at least as to one not a maker) unless the *ratio decidendi* of *Haynes* points in an opposite direction. We think that it does not—that the effect of *Haynes* was, to equate § 5841 and § 5851 in terms of registration—to condemn § 5851 for requiring a registration—to repudiate a construction of the registration requirements of § 5851 which would make the offense the crime of possessing a firearm which someone else had failed to register. The Supreme Court's careful analysis of the language of § 5851, with its emphasis on the words 'at any time' and the words 'receive or possess' which are used in the transportation and making requirements of § 5851, and which are not used in connection with the registration requirements, indicates a recognition by the Supreme Court of the difference between the interrelationship of § 5841 (the registration section) and § 5851, and the interrelationship between § 5821 (the making

9. Sipes v. United States, 8 Cir. 1963, 321 F.2d 174, cert. den. 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150; Mares v. United States, 10 Cir. 1963, 319 F.2d 71.

10. Reed v. United States, 8 Cir. 1968, 401 F.2d 756, cert. den. 394 U.S. 1021, 89 S. Ct. 1637, 23 L.Ed.2d 48; Lewis v. United States, 10 Cir. 1969, 408 F.2d 1310; United States v. Taylor, D.C.Wis.1968, 286 F.Supp. 683; United States v. Casson, D.C.Del.1968, 288 F.Supp. 86; United States v. Benner, D.C.Ore.1968, 289 F.Supp. 860, affirmed 9 Cir. June 10, 1969, 417 F.2d 421. To the contrary, see United States v. Stevens, D.C.Minn. 1968, 286 F.Supp. 532.

11. The cases cited in footnote 8 of the Benner case are: "Mares v. United States, 319 F.2d 71 (10 Cir. 1963); Sipes v. United States, 321 F.2d 174 (8 Cir. 1963); United States v. Della Rocca, 388 F.2d 525 (2 Cir. 1968); Taylor v. United States, 333 F.2d 721 (10 Cir. 1964); see Pruitt v. United States, 364 F.2d 826 (6 Cir. 1966)."

section) and § 5851. Insofar as the Fifth Amendment is concerned (and disregarding for the moment the status of defendant as a maker) we believe that the crime of receiving or possessing a firearm which has been illegally made is complete when the firearm is received or possessed and that there is no registration problem involved and hence no interference with the privilege of self-incrimination."

Accordingly, we conclude that the District Court correctly held that the charge of possessing a shotgun, in violation of § 5851, which was not lawfully made under § 5821, did not involve the dereliction of a statutory duty compliance with which would have violated the defendant's privilege against self-incrimination.

The defendant also argues that the indictment was defective in that it also charged the violation of §§ 5811 and 5814, that defendant possessed a shotgun unlawfully transferred. As we have already indicated however, the district court found no evidence to support this charge. Accordingly, this issue is not before us on this appeal.[12]

We conclude that the district court did not err in denying the defendant's motion to dismiss the indictment.

The defendant's next contention is that the district court erred in admitting over defendant's objection a certified report signed by Gerald C. Benedict, Coordinator, Enforcement Branch, Alcohol and Tobacco Tax Division, Internal Revenue Service, Washington, D. C., who, after reciting that he is the custodian and controller of the National Firearms Registration and Transfer Record showing the registration, as well as the importation, transfer and making of firearms, as required under the National Firearms Act, filed in the National Office of the Internal Revenue Service, Washington, D. C., certified that

"after diligent search of said record, no evidence has been found to show that any person has acquired, by importation, transfer, or making, a weapon with barrels 16¼ inches in length, in overall length of 25 inches, having the stock sawed off, and bearing serial number 30020, which was made from a Crescent Firearms Company, Model 60, double-barrel, 12 gauge shotgun, additionally identified as having the numbers '301 20' appearing on the forestock; or that any person has paid a transfer or a making tax with respect to a transfer or the making of said firearm * * *"

Selden S. Baker, Chief of the Disclosure and Liaison Branch, Collection Division, Internal Revenue Service, under the direction of the Secretary of the Treasury, certified that Gerald C. Benedict was the custodian and controller of the records.

The statement was offered by the Government and received by the District Court pursuant to Rule 27 of the Federal Rules of Criminal Procedure as an "official record or an entry therein or the lack of such a record or entry", which under that rule "may be proved in the same manner as in civil actions." Rule 44 of the Federal Rules of Civil Procedure is thus made applicable to criminal cases. The rule, in pertinent part, provides:

"Rule 44. Proof of Official Record

(a) Authentication.

(1) *Domestic*. An official record kept within the United States * * * or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that such officer has the custody. * * *

\* \* \* \* \* \*

12. We call attention to the excellent discussion on this subject by Judge Coffin, speaking for the Court of Appeals for the First Circuit, Varitimos v. United States, 1968, 404 F.2d 1030, cert. den. 395 U.S. 976, 89 S.Ct. 2126, 23 L.Ed.2d 765.

(b) *Lack of Record.* A written statement that after diligent search no record or entry of a specified tenor is found to exist in the records designated by the statement, authenticated as provided in subdivision (a) (1) of this rule in the case of a domestic record, * * * is admissible as evidence that the records contain no such record or entry.

\* \* \* ''

The District Court determined that the document was admissible under the authority of United States v. Mares, D.C. Colo.1962, 208 F.Supp. 550, aff. Mares v. United States, 10 Cir. 1963, 319 F.2d 71, and Hollingsworth v. United States, 10 Cir. 1963, 321 F.2d 342. William F. Naylor, special investigator with the Alcohol and Tobacco Division of the United States Treasury Department, identified the shotgun in evidence as the weapon described in the statement.

The defendant contends that the admission of this document violated his right of confrontation under the Sixth Amendment. It is true that confrontation of a witness so that he may be cross-examined is a matter of right in a criminal prosecution, but it has long been held that official registers or records kept by persons in public office in which they are required, either by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties, are admissible, without calling the persons who made them, as a reasonable exception to the hearsay rule.[13] And it has also been held that an affidavit of an officer having custody of official records as to lack of a certain record, after diligent search, is admissible under Rule 27 to show the absence of any record or entry of a relevant act, transaction or occurrence, and is not violative of the defendant's constitutional right of confrontation.[14] The trial judge has the duty to determine whether such documents are constitutionally admissible under the Sixth Amendment guarantee of confrontation. In this case the trial judge decided that the certificate of Benedict was admissible under Criminal Rule 27. Under the circumstances, we are satisfied that its admission was not error.

The defendant's final contention is that the presumption of possession established by the second sentence of 26 U.S.C. § 5851 is unconstitutional, and that in finding the defendant guilty of possessing a shotgun illegally made under § 5821 the District Court "must have invoked the presumption under § 5851, for if the Court did not invoke the presumption the Government did not establish facts sufficient to sustain a conviction under § 5821 and § 5851." We do not reach the question of the constitutionality of the presumption, however, for it is clear that there was sufficient proof of the commission of the offense charged to support the finding of the District Court. The defendant was not convicted of the mere possession of the weapon nor did the District Court find that defendant's possession created an inference of guilt. The cases upon which the defendant relies, Tot v. United States, 1943, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519, and United States v. Romano, 1965, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 are thus distinguishable on their facts and under the statutes there involved. No useful purpose would be served in discussing them further here.

The judgment of the District Court will be affirmed.

13. Heike v. United States, 2 Cir. 1911, 192 F. 83, 94–95.

14. T'kach v. United States, 5 Cir. 1957, 242 F.2d 937; Holland v. United States,

10 Cir. 1954, 209 F.2d 516, 521, aff. 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.