**Theodore VARITIMOS, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 7109.**

United States Court of Appeals First Circuit.

Heard Sept. 9, 1968.

Decided Dec. 9, 1968.

Murray H. Falk, Boston, Mass., with whom Moulton, Looney, Mazzone & Falk, Boston, Mass., were on brief, for appellant.

Robert D. Canty, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., and Eric M. Rubin, Atty., Dept. of Justice, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from a conviction on five counts of an indictment charging violation of the National Firearms Act, 26 U.S.C. § 5814, § 5851 (1964).[1] The issue presented is whether or not the order form requirements of 26 U.S.C. § 5814 (1964) and the tax required by 26 U.S.C. § 5811 (1964) abridge appellant's privilege against self-incrimination under the Fifth Amendment of the Constitution.

We consider first the counts alleging violation of 26 U.S.C. § 5851 (1964) for receipt or possession as a transferee of a firearm as defined in 26 U.S.C. § 5848 (1964) which has been transferred in violation of 26 U.S.C. § 5814 (1964). Section 5814 of the National Firearms Act provides that it shall be unlawful to acquire a firearm as defined by the Act except pursuant to a written order form issued by the Secretary of the Treasury.[2] Appellant, relying on Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), contends that the order form requirement of section 5814 is violative of the privilege against self-incrimination as guaranteed by the Fifth Amendment. As the discussion which follows will show, appellant's reliance is misplaced. Haynes, supra, involved a violation of section 5851 for possession of a firearm which had not been registered under section 5841. There the Supreme Court held that the violation was essentially

[1.] The five counts included: (1) two counts that the defendant in violation of section 5851 knowingly possessed a machine gun which had been transferred in violation of section 5814; (2) two counts that the defendant in violation of section 5851 knowingly possessed a machine gun on which the tax imposed by section 5811 had not been paid; (3) one count that the defendant had transferred a machine gun in violation of section 5814.

Section 5851 provides that it shall be unlawful to receive or possess a firearm as defined in the Act which has been transferred in violation of the Act. This would include transfers made without use of the order form required by section 5814 (see n. 2 infra) and without payment of the tax imposed by section 5811. Section 5811 requires that the transferor pay a tax on the firearm to be transferred by affixing the proper tax stamps on the order form of section 5814. If the transferor does not pay the tax, the transferee is jointly and severally liable for its payment.

[2.] The relevant parts of section 5814 are as follows:

"(a) General requirements. It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in blank in duplicate for that purpose by the Secretary or his delegate. Such order shall identify the applicant by such means of identification as may be prescribed by regulations under this chapter: Provided, That, if the applicant is an individual, such identification shall include fingerprints and a photograph thereof.

(b) Contents of Order Form. Every person so transferring a firearm shall set forth in each copy of such order the manufacturer's number or other mark identifying such firearm, and shall forward a copy of such order to the Secretary or his delegate. The original thereof, with stamp affixed, shall be returned to the applicant."

for failure to register and that registration would have required a direct incrimination by petitioner. Following the reasoning of *Haynes,* supra, we must ask two questions: first, is conviction under section 5851 meaningfully distinguishable from a conviction under section 5814?; and, if it is not, does the order form requirement of section 5814 violate the privilege against self-incrimination?

With regard to the first question, the Supreme Court indicated in *Haynes,* supra, that section 5851 as it relates to section 5814 punishes receipt or possession of a firearm which has not been transferred in compliance with section 5814 rather than failure to comply with section 5814. *Haynes,* supra, at 92, 88 S.Ct. 722. In *Haynes* the Supreme Court did not pass on the constitutional status of this construction of the statute and it could be argued that the statute as written purports to punish receipt or possession of a firearm which had been transferred unlawfully at some remote point in time as well as an immediate unlawful transfer.[3] This interpretation would pose no constitutional problem up to the point where a prospective transferee complies with section 5814, since, prior to so complying, he is not required to do anything except to decline acquisition of a firearm which was "at any time" illegally transferred.

But there might well be a constitutional infirmity were section 5851 construed to permit punishing a transferee where the immediate acquisition was made in compliance with the act but where, unknown to him, at some prior point in time the firearm had been transferred unlawfully. Indeed, if the statute were so construed, the very act of compliance with the statute through use of the order forms would provide incriminating evidence.

■ We do not believe that such an intent can be attributed to Congress and we construe the statute so as to avoid the constitutional issue. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (concurring opinion). We think that Congress employed the "at any time" language of section 5851 to indicate that a possessor of a firearm which has "at any time" been unlawfully transferred may not exculpate himself merely by showing that he was not involved in the original unlawful transfer. Russell v. United States, 306 F.2d 402, 411 (9th Cir. 1962). That is not to say, however, that one who acquired a firearm in conformity with the act may be punished for prior illegal transfers by other persons of the same firearm.

■ Section 5814 clearly contemplates that a firearm may be lawfully acquired by following procedures set forth therein. A contrary interpretation would be inconsistent with the clear implication of the first sentence of section 5814: "It shall be unlawful * * * to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article * * *." We can only equate "it shall be unlawful * * * except" with "it shall be lawful * * * if" transfer pursuant to section 5814 takes place. We therefore hold that compliance with section 5814 means that a transferee may not be punished, federally, because the same firearm was illegally transferred in the past by others.[4] Thus, when section

---

3. Section 5851 provides in part that:
   "It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of sections 5811, 5812(b), 5813, 5814, 5844, or 5846 * * *."

4. This is in keeping with the purpose of the National Firearms Act. Congress could have prohibited the transfer of fire-

arms altogether. Instead, it chose to permit transfer subject to well-defined regulation. The order form requirements of section 5814 are central to the legislative scheme in that compliance with section 5814 furnishes the government with the information necessary to effective regulation. Obviously, acquisition of a firearm in conformity with section 5814 satisfies the Congressional purpose and prevents

5851 states that possession is prima facie proof of violation, it refers, not to possession acquired under section 5814, but to possession unsupported by compliance with the Act.

■ Assuming that section 5851 is in fact directed at failure to use the order forms required by section 5814,[5] there would still be no violation of the privilege against self-incrimination. Appellant's argument is that he is in the same position as the petitioners in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), who by the very act of filing the wagering tax forms and paying the tax were admitting that they were presently engaged in unlawful conduct or that they planned to do so in the future.[6] Similarly, appellant compares himself to the petitioner in Haynes, supra, where the act of registering the firearm would have constituted a direct admission that an unregistered firearm was acquired in violation of the National Firearms Act. But as to appellant there is no substantial hazard that the information required by the order form will furnish a "link in the chain" leading to a conviction for illegal activity. That one has properly started the legal process of qualifying to receive

a firearm is no indication that he will subsequently depart from that process. Unlike the defendant's compelled announcement in Marchetti of his engaging in conduct which was necessarily illegal in his state, the averment here of an intention to receive firearms foretold an action which could be executed in a lawful manner by an unrestricted category of individuals. The existence of such a substantial, realistic, and lawful alternative affords Congress adequate ground within which to carry out a good faith, non-incriminatory purpose. The comparison of appellant to the petitioner in Haynes, supra, is even more untenable. In Haynes the registration of the firearm would not only have supplied a link in the chain but the entire chain.

Appellant's argument is essentially this—that a person bent on circumventing the law as to the transfer of firearms who chooses to fill out part of the form while secretly intending not to have the remainder completed (by securing the proper authorizations) is incriminating himself. This argument seems to us to be unpardonably hypothetical. A person who initiates the execution of the form can only intend to have it completed. If this happens, there can be no incrimination. A person intending to violate the law would not initiate a form

the evil which section 5851 is designed to cover.

We acknowledge that our interpretation considerably constricts the meaning of "at any time" in section 5851. While subsequent Congresses shed no light on the intent of earlier ones, we take some comfort in the recent action of the 90th Congress. In section 5861 of the Gun Control Act, Public Law 90, the successor of section 5851, the words "at any time" have been entirely read out of the legislation.

5. In Haynes, supra at 92, 88 S.Ct. 722 at 728, the Supreme Court indicated that section 5851 as it referred to section 5814 punished for receipt or possession of a firearm transferred in violation of section 5814. However, with respect to section 5851 as it referred to section 5841, the Court stated that:

"* * * we find it significant that the offense defined by §, 5851 is the posses-

sion of a firearm which has not been registered 'as required by section 5841.' In the absence of persuasive evidence to the contrary, the clause's final words suggest strongly that the perimeter of the offense which it creates is to be marked by the terms of the registration requirement imposed by § 5841."

This statement in Haynes arguably suggests, despite the Court's prior remarks, that the "perimeter of the offense" of section 5851 as it relates to section 5814 is in fact the failure to follow the order form procedure of section 5814, rather than receipt or acquisition of a firearm not transferred in compliance with section 5814.

6. In Marchetti, supra, the Court observed that every state except Nevada has broad prohibitions against wagering, the very conduct which would be admitted by the filing of the return and payment of the tax. 390 U.S. at 44 n. 5, 88 S.Ct. 697.

which can be completed only by obeying the law. Here, too, there is no incrimination.

■ We cannot believe that the Fifth Amendment can be so tortured as to proscribe the use of an application form which initiates a transaction which can be lawfully completed.

■ Appellant presses a rather interesting argument based on the Supreme Court's indication in *Haynes,* supra, that the National Firearms Act is directed at persons engaged in unlawful activity. 390 U.S. 85, 87 n. 4, 88 S.Ct. 722. Apparently, appellant's position is that even though a firearm is acquired lawfully, its acquisition focuses suspicion on the transferee because of the legislative purpose of the Act. Thus, should a transferee subsequently engage in illegal activity involving a firearm, the order form would provide a link in the chain leading to conviction. The answer to this argument is that the protection of the Fifth Amendment privilege is inapplicable to prospective acts involving only a speculative and insubstantial hazard of incrimination. *Marchetti,* supra, 390 U.S. at 54, 88 S.Ct. 697.

In *Marchetti* the fact that 49 states prohibited the very activity disclosed by payment of the tax constituted a real hazard of incrimination. But here there is no prohibition, either state or federal, against possession of a firearm lawfully acquired under the National Firearms Act.[7] Necessarily, a question of incrimination can arise only if a wholly different criminal act is performed at some point in the future. To accept appellant's argument would be tantamount to saying that a pharmacist should not be required to acknowledge receipt of certain drugs since he may secretly intend to distribute them without a prescription, and would therefore be supplying evidence of receipt which would incriminate him.

■ We affirm appellant's conviction on the counts four and eleven discussed above. We need not pass on the remaining three counts.[8] The concurrent sen-

7. The regulations contemplate that, before submitting the application form to federal officials for approval, an intended possessor obtain a certificate " * * * of the local chief of police, sheriff of the county, United States Attorney, United States Marshal, or other person whose certificate may in a particular case be acceptable * * * certifying * * * that the firearm is intended by the applicant for lawful purposes." 26 C.F.R. § 179.99 (1968).

Indeed, in this case had appellant procured such a certificate from his local police chief, Mass.Gen.Laws, c. 269 § 10 would have posed no problem. Mass.Gen Laws, c. 269 § 10 provides that it shall be unlawful to possess a machine gun without permission. However, Mass.Gen. Laws, c. 140 § 131 provides that a local chief of police may give such permission on application by a party through the granting of a license. Thus, in the present case the appellant could have simultaneously complied with both 26 C.F.R. § 179.99 and Mass.Gen.Laws, c. 140 § 131. Indeed, by its express terms 26 C.F.R. § 179.99 seems to contemplate that the certificate will be obtained only if all state law provisions have been satisfied.

We acknowledge the possibility that a U. S. Attorney or U. S. Marshal might so certify, in ignorance of state law, with the result that a citizen could have gone through the required procedure only to find that he was actively in violation of state law. Such a possibility is not only, in our opinion, remote but we do not think it unreasonable to place upon the prospective acquirer, if he has any doubt of the legality of his transaction, the burden of seeking out the local official whose signature would effectively give him protection under state law.

8. While we need not decide the status of the remaining three counts we note that the counts involving receipt or possession of a firearm upon which the tax imposed by section 5811 has not been paid appear to pass muster under *Haynes,* supra n. 3, in light of the Supreme Court's interpretation of section 5851 as it relates to section 5811. 390 U.S. at 92, 88 S.Ct. 722. If, on the other hand, the "perimeter" of the offense is failure to pay the tax, a serious question of self-incrimination would be presented. See n. 5 supra. Finally, the count dealing with transfer in violation of section 5814 raises substantial Fifth Amendment issues since the

tences imposed by the trial court are well within that which could be imposed under a single count.[9] United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L. Ed.2d 658 (1965). In addition, there is no suggestion that appellant received a greater sentence due to the presence of multiple counts. Saville v. United States, 400 F.2d 397 (1st Cir. 1968).

order form requires the giving of the serial number of the firearm, the maker, and most importantly, an admission of ownership.

9. 26 U.S.C. § 5861 (1964) provides that the penalty for violation of the Act shall be up to $2,000 in fines or up to five years imprisonment, or both.