**UNITED STATES of America,
Appellee,**

v.

**Charles Edward BENNER, Appellant.**

**No. 23026.**

United States Court of Appeals
Ninth Circuit.

Oct. 13, 1969.

---

2. Excerpts from the Q-and-A statement are printed as part of the district court's opinion below. 285 F.Supp. 233, 237–238 n. 2.

422

William V. Bierek (argued), Portland, Or., for appellant.

Tommy Hawk (argued), Asst. U. S. Atty., Sidney I. Lezak, U. S. Atty., Portland, Or., for appellee.

Before CHAMBERS and DUNIWAY, Circuit Judges, and SMITH,* District Judge.

* Honorable Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

1. We use the word "firearm" to mean the sawed off rifle which defendant possessed, and not the other kinds of firearms which 28 U.S.C. § 5848 describes.

2. "Declaration.—It shall be unlawful for any person subject to the tax imposed by subsection (a) to make a firearm unless, prior to such making, he has declared in writing his intention to make a firearm, has affixed the stamp described in subsection (d) to the original of such declaration, and has filed such original and a copy thereof. The declaration required by the preceding sentence shall be filed at

RUSSELL E. SMITH, District Judge.

On June 10, 1969, we filed an opinion in this case affirming the judgment. Thereafter, we granted a rehearing. The opinion filed on June 10 is withdrawn.

Defendant was charged with and convicted of illegally possessing under 26 U.S.C. § 5851, a firearm[1] which had been made in violation of 26 U.S.C. § 5821, requiring that one who intends to make a firearm declare his intention to so do and pay a tax.[2]

The sole problem on this appeal is whether, as applied to the defendant here who made the firearm,[3] §§ 5851 and 5821 of Title 26 U.S.C. as they operate together are violative of Fifth Amendment rights. The district court held that they were not.[4]

Two aspects of the case must be considered: FIRST, whether, as initially urged by appellant, under the decisions in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) the sections involved offend the Fifth Amendment in their application to any person. SECOND, as urged for the first time on petition for rehearing, whether the Fifth Amendment is violated because the de-

such place, and shall be in such form and contain such information as the Secretary or his delegate may by regulations prescribe. The original of the declaration, with the stamp affixed, shall be returned to the person making the declaration. If the person making the declaration is an individual, there shall be included as part of the declaration the fingerprints and a photograph of such individual." 26 U.S.C. § 5821(e).

3. It was not charged that defendant made the firearm, but the record shows that he did.

4. United States v. Benner, 289 F.Supp. 860 (D.Or.1968).

fendant here enjoys, at least for the purposes of this case, the status of a felon.[5]

*FIRST:* Prior to *Haynes* it was uniformly held that persons registering under § 5841 incriminated themselves by admitting possession of firearms which were presumptively illegally possessed under § 5851.[6] The opinion in *Haynes* held that insofar as registration was involved, §§ 5841 and 5851 were indistinguishable and that the distinction which had been drawn[7] to the effect that § 5841 dealt with the defendant's failure to register while § 5851 dealt with the possession of a gun which someone else had failed to register was impermissible.

Prior to *Haynes,* it was uniformly held that the Fifth Amendment was not violated by the provisions of § 5851 dealing with possession of firearms which had been illegally made under § 5821[8] and the same result was reached in cases involving the illegal transportation of firearms in interstate commerce in violation of § 5855.[9] *Haynes* did not deal with the interrelationship of §§ 5821 and 5851, and the Court of Appeals decisions quoted in footnote 8 remain as authority (at least as to one not a maker) unless the ratio decidendi of *Haynes* points in an opposite direction. We think that it does not—that the effect of *Haynes* was, to equate § 5841 and § 5851 in terms of registration—to condemn § 5851 for requiring a registration—to repudiate a construction of the registration require-

ments of § 5851 which would make the offense the crime of possessing a firearm which someone else had failed to register. The Supreme Court's careful analysis of the language of § 5851, with its emphasis on the words 'at any time' and the words 'receive or possess' which are used in the transportation and making requirements of § 5851, and which are not used in connection with the registration requirements, indicates a recognition by the Supreme Court of the difference between the interrelationship of § 5841 (the registration section) and § 5851, and the interrelationship between § 5821 (the making section) and § 5851. Insofar as the Fifth Amendment is concerned (and disregarding for the moment the status of defendant as a maker) we believe that the crime of receiving or possessing a firearm which has been illegally made is complete when the firearm is received or possessed and that there is no registration problem involved and hence no interference with the privilege of self-incrimination.

Because the defendant here made the firearm which forms the basis for the prosecution, it remains, however, to determine whether a manufacturer is required to incriminate himself by declaring his intent to manufacture as required by § 5821, in light of *Marchetti, Grosso* and *Leary.* The first two of these cases dealt with wagering which, together with its ancillary activities, is widely prohibited under federal and

5. The Government urges that the court may not consider the argument because it was advanced for the first time upon petition for rehearing. As we read Grosso, supra, however, we think that the privilege exists until it is waived. The failure to urge the exact legal theory now advanced would not constitute a waiver.

6. Russell v. United States, 306 F.2d 402 (9 Cir. 1962); Deckard v. United States, 381 F.2d 77 (8 Cir. 1967); Lovelace v. United States, 357 F.2d 306 (5 Cir. 1966); Dugan v. United States, 341 F.2d 85 (7 Cir. 1965).

7. Frye v. United States, 315 F.2d 491 (9 Cir. 1963); Starks v. United States, 316 F.2d 45 (9 Cir. 1963); Decker v. United

States, 378 F.2d 245 (6 Cir. 1967); Haynes v. United States, 372 F.2d 651 (5 Cir. 1967); Castellano v. United States, 350 F.2d 852 (10 Cir. 1965); Pruitt v. United States, 364 F.2d 826 (6 Cir. 1966).

8. Mares v. United States, 319 F.2d 71 (10 Cir. 1963); Sipes v. United States, 321 F.2d 174 (8 Cir. 1963); United States v. Della Rocca, 388 F.2d 525 (2 Cir. 1968); Taylor v. United States, 333 F.2d 721 (10 Cir. 1964); See Pruitt v. United States, 364 F.2d 826 (6 Cir. 1966).

9. United States v. Forgett, 349 F.2d 601 (6 Cir. 1965); See Deckard v. United States, 381 F.2d 77 (8 Cir. 1967).

state law. The third case, *Leary,* dealt with marijuana, the possession of which the Supreme Court determined to be unlawful under the laws of the 50 states. The Court said in *Marchetti:* "wagering is 'an area permeated with criminal statutes' and those engaged in wagering are a group 'inherently suspect of criminal activities,' " and in *Leary* the Court said that the class required to obtain a marijuana order form constituted "[a selective group] inherently suspect of criminal activity." The laws considered in *Marchetti* and *Grosso* were aimed at the person engaged in the wagering activity —it was the gambler who was required to pay the tax to register his wagering activities. His registration was a declaration of intent to engage in activities which were almost universally condemned. The court concluded that such registration would focus the lights of investigation upon the gambler for past offenses and provide evidence of violations as to offenses not yet committed. In *Leary* the person complying with the tax provisions would have been required to identify himself as a member of the "selective" and "suspect" group.

■ We cannot close our eyes to the fact that the sawed off shotgun or rifle is a preferred weapon of persons engaged in gangster-like activity and that very likely Congress was motivated more by a desire to control the weapons than to raise revenue. Even so, it is not the manufacture of the firearms at which the law was aimed—the manufacture in and of itself is harmless. The concern is with the use of the firearm in the commission of murders, robberies and other crimes of violence. The maker of the firearm does not, by declaring his intent to make a firearm, make any declaration of an intention to do any illegal act. A firearm could be legally possessed in most states, and we specifically note that it could be legally possessed in Oregon,[10]

10. In the following states a firearm similar to the one made by the defendant could be legally possessed although it would be illegal to carry it concealed without a permit or license:

Alabama (Code of Ala., Tit. 14, § 161 (1940)); Alaska (Alaska Stats. § 11.55.010 (1962)); Arizona (Ariz.Rev. Stats. § 13–911 and § 13–917 (1956)); Arkansas (Ark.Stats. § 41–4501 (1947)); Colorado (Colo.Rev.Stats. § 40–11–I (1963)); Connecticut (Conn. Gen.Stat.Ann. § 53–206 and § 29–35 (1958)); District of Columbia (D.C. Code § 22–3204 (1967)); Delaware (Del.Code, Tit. 11, § 463 (1953)); Georgia (Ga.Code Ann. § 26–5101 (1953)); Idaho (Idaho Code § 18–3302 (1947)); Illinois (Ill.Ann.Stat., ch. 38, § 24–1 (1968 amend.)); Indiana (Ind.Stat.Ann. § 10–4706 (1956)); Iowa (Iowa Code § 695.2 and § 695.4 (1966)); Kansas (Kan.Stat.Ann. § 21–2411 (1963)); Kentucky (Ky.Rev. Stat. § 435.230 (1962)); Maine (Me. Rev.Stat.Ann., Tit. 25, § 2031 (1964)); Maryland (Code of Md., Art. 27, § 36 (1957)); Massachusetts (Laws of Mass., Ch. 269, § 10 (1955)); Michigan (Mich.Stat.Ann. § 28.424 (1963), C.L.1948, § 750.227; Minnesota (Minn. Stat.Ann. § 625.16 (1964)); Missouri (Ann.Mo.Stat., § 564.610 (1949)); Montana (Rev.Code of Mont. § 94–3525 (1947)); Nebraska (Rev.Stat. of Neb. § 28–1001 (1943)); Nevada (Nev.Rev. Stat. § 202.350 (1967)); New Hampshire, (N.H.Rev.Stat.Ann. § 159.4 (1955)); New Jersey, (N.J.Stat.Ann. § 2A:151–41 (1951)); New Mexico (N.M.Stat. § 40A–7–2 (1953)); North Carolina (Gen.Stat. of N.C., § 14–269 (1951)); North Dakota (N.D.Cent. Code § 62–03–01 (1960)); Ohio (Ohio Rev.Code Ann. § 2923.01 (1953)); Oklahoma (21 Okl.Stat.Ann. § 1271 (1951)); Oregon (Or.Rev.Stat. § 166.-240 and § 166.250 (1967)); Pennsylvania (18 Pa.Stat.Ann. § 4628(e) (1963)); Rhode Island (Gen.Laws of R.I. § 11–47–8 (1956)); South Carolina (Code of Laws of S.C. § 16–145 (1962)); South Dakota (S.D.Code § 13.1609 and § 21.0105 (1939)); Tennessee (Tenn.Code Ann. § 39–4901 (1956)); Texas (Vernon's Ann.Tex. Pen.Code § 483 (1952)); Utah (Utah Code Ann. § 76–23–4 (1953)); Vermont (13 Vt.Stat.Ann. § 4003 (1958)); Virginia (Code of Va., § 18.1–269 (1950)); Washington (Rev.Code of Wash.Ann. § 9.41.050 (1961)); West Virginia (W.Va.Code § 61–7–1 (1966)); Wisconsin (Wis.Stat.Ann. § 941.23 (1958)); Wyoming (Wyo.Stat. § 6–239 (1957)).

by a non-felon. We perceive a difference between a law which requires the declaration that one is engaged in an activity which is in itself criminal and one which requires a person to declare an intention to engage in an activity which is not in itself criminal and which does not of necessity lead to any criminal act. For this reason and because the area of the firearm is not permeated to the same extent with criminal statutes as are the wagering and marijuana areas, we do not believe that this case is governed by *Marchetti, Grosso* and *Leary.*

The reported decisions on the question here decided have been examined. De-Pugh v. United States, 401 F.2d 346 (8 Cir. 1968) and United States v. Stevens, 286 F.Supp. 532 (D.Minn.1968) express views contrary to those here expressed. With deference we disagree. In Reed v. United States, 401 F.2d 756 (8 Cir. 1968) the problem was noted, but not decided. United States v. Taylor, 286 F.Supp. 683 (E.D.Wis.1968) is in accord with our analysis of *Haynes.*

*SECOND:* In Murphy v. Waterfront Commission, 378 U.S. 52, 77, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1954), the Supreme Court said:

"We hold that the constitutional privilege against self-incrimination protects a state witness against incrimination under federal law as well as state law and a federal witness against incrimination under state as well as federal law."

In *Haynes, supra,* the court noted that this doctrine was applicable to incrimination brought about by gun registration laws.[11]

O.R.S. § 166.270 provides in part:

" * * * [A]ny person who has been convicted of a felony against the person or property of another * * *

who owns, or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person * * shall be punished upon conviction by imprisonment in the penitentiary for not more than five years."

O.R.S. § 166.210(1) provides:

" 'Pistol', 'revolver' and 'firearms capable of being concealed upon the person,' apply to and include all firearms having a barrel less than 12 inches in length."

In this case defendant was charged with possessing a rifle with a barrel of 7½ inches. In Oregon one convicted of a felony against the person and property of another would, by compliance with 26 U.S.C. §§ 5851 and 5821, declare his intention to violate the laws of Oregon. Under *Marchetti* the fact that the felon who declares his intention to make a firearm may never previously have made or possessed a firearm illegal under state law and perhaps never will does not operate to put the registration requirement out of the orbit of the protection afforded by the Fifth Amendment. We conclude that if at the time defendant made the firearm he was a felon, he has Fifth Amendment protection and the conviction may not stand.

Defendant was arrested with the firearm in February, 1968. In 1966 he had been convicted of burglary or larceny and placed on three years probation. The defendant told the arresting officer that he had had the gun for some time. If he made the firearm before his conviction, then he had no privilege; if after, he did have one by virtue of O.R.S. § 166.270.

The case is remanded to the District Court with directions to determine whether at the time of the manufacture

In the following states the mere possession of a firearm similar to that made by the defendant could be a crime:

California (West's Ann.Cal.Pen.Code § 12001.5 and § 12020 (1968 Cum. Supp.)); Florida (Fla.Stat.Ann. § 790.05 (1965)); Hawaii (Rev.Laws of Hawaii, Ch. 157, § 3 (1955)); Louisi-

ana (La.Rev.Stat. § 40:1783 (1950)); Mississippi (Miss.Code § 8621 (1956)); New York (N.Y.Penal Law, McKinney's Consol.Laws, c. 40, § 265.05 (1967)).

11. See footnote 11, 390 U.S. at 97, 88 S. Ct. 722, 19 L.Ed.2d 923.

of the firearm defendant was a felon who had been convicted of an offense against the person or property of another. If defendant's record was free from such conviction, then his conviction in this case should stand, but if he was a felon then his conviction should be set aside.[12]

12. The defendant was not charged with making a weapon in violation of § 5821 but of possessing under § 5851 a weapon made in violation of § 5821. If, as we have concluded, defendant could be convicted of unlawful manufacture under § 5821, we see no constitutional reason why he could not be convicted of illegal possession under § 5851. If, at the time he was required to file the declaration and pay the tax defendant's Fifth Amendment rights were not infringed, then he must bear the burden of failing to pay the tax, and from a self-incrimination standpoint it makes no difference whether the burden is imposed for making or for possessing what was illegally made.