**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Daniel Henry SHER, Defendant-Appellant.**

**No. 23749.**

United States Court of Appeals, Ninth Circuit.

Feb. 4, 1970.

William H. Mullen, Seattle, Wash., for defendant-appellant.

John M. Darrah, Asst. U. S. Atty., Eugene G. Cushing, U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before MERRILL, KOELSCH and WRIGHT, Circuit Judges.

MERRILL, Circuit Judge.

Appellant, in the District Court for the Western District of Washington, was convicted of receiving and possessing a firearm in violation of 26 U.S.C. § 5851 [1] which had been transferred in violation of 26 U.S.C. § 5814.[2] The firearm in question was a Steyr machine gun, possession of which is made a crime under Washington State law.[3]

---

1. "It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of section[s] * * * 5814."

2. *"(a) General requirements.*—It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in blank in duplicate for that purpose by the Secretary or his delegate. Such order shall identify the applicant by such means of identification as may be prescribed by regulations under this chapter; *Provided,* That, if the applicant is an individual, such identification shall include fingerprints and a photograph thereof.

*(b) Contents of order form.*—Every person so transferring a firearm shall set forth in each copy of such order the manufacturer's number or other mark identifying such firearm, and shall forward a copy of such order to the Secretary or his delegate. The original thereof, with stamp affixed, shall be returned to the applicant."
(Section 5811 requires payment of a tax of $200 upon the transfer of a firearm, payment to be represented by "appropriate stamps to be provided by the Secretary or his delegate.")

3. Washington law provides as follows:
   *"Machine guns prohibited.* That it shall be unlawful for any person to

On several occasions before and during trial appellant sought to secure dismissal of the charges against him upon the ground that the provisions of § 5814 required him to incriminate himself and that, consequently, conviction was barred by the Fifth Amendment. All such motions were denied.

In our judgment, the charges must be dismissed on authority of Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Benner v. United States, 417 F.2d 421 (9th Cir. 1969).

*Haynes* did not involve § 5814. It struck down a conviction under § 5851 for possession of a firearm which had not been registered as required by § 5841. Since such registration would have compelled Haynes to provide self-incriminating information, it was held that the enforcement of § 5851 against the petitioner, given his timely assertion of the privilege, was not constitutionally permissible. 390 U.S. at 100, 88 S.Ct. 722.

The Government seeks to distinguish the present case upon the ground that § 5814 does not require the transferee of a firearm to incriminate himself since the section's requirements all antedate transfer and thus would occur *prior* to the commission of any state crime. All the would-be transferee need do to avoid incriminating himself, says the Government, is refrain from committing the crime.

A similar argument was considered and rejected in Marchetti v. United States, *supra*. Discussing an earlier case. Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), the Court stated:

"The Court held in *Lewis* that the registration and occupational tax requirements do not infringe the constitutional privilege because they do not compel self-incrimination, but merely impose on the gambler the initial choice of whether he wishes at the cost of his constitutional privilege, to commence wagering activities. The Court reasoned that even if the required disclosures might prove incriminating, the gambler need not register or pay the occupational tax if only he elects to cease, or never to begin, gambling. There is, the Court said, 'no constitutional right to gamble.' 348 U.S. at 423, 75 S.Ct. at 418.

We find this reasoning no longer persuasive. The question is not whether petitioner holds a 'right' to violate state laws, but whether, having done so, he may be compelled to give evidence against himself." 390 U.S. at 51, 88 S.Ct. at 704.

The Court rejected the reasoning of *Lewis* that the privilege is inapplicable to prospective acts:

"The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination. \* \* \* We see no reason to suppose that the force of the constitutional prohibition is diminished merely because confession of a guilty purpose precedes the act which it is subsequently employed to evidence." 390 U.S. at 53–54, 88 S.Ct. at 705.

That the hazard of incrimination presented in the instant case was not trifling or imaginary seems apparent. Ad-

---

manufacture, own, buy, sell, loan, furnish, transport, or have in possession, or under control, any machine gun, or any part thereof capable of use or assembling or repairing any machine gun: *Provided, however,* That such limitation shall not apply to any peace officer in the discharge of official duty, or to any officer or member of the armed forces of the United States or the state of Washington." (RCW 9.41.190)
"*Penalty*. Any person violating any of the provisions of RCW 9.41.190 through 9.41.220 shall be guilty of a felony." (RCW 9.41.210)

mittedly, transfer under the Act is not prohibited; it is simply taxed. See Leary v. United States, 395 U.S. 6, 20, 22, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).[4] Nor is possession made illegal *per se*. But possession of a machine gun is, as we have noted, made criminal under the laws of the State of Washington.[5]

While the Government is not required under the Act to make its records available to state law enforcement agencies, as was the case with the marihuana tax (*Leary*) and gambling occupation tax (*Marchetti*), there was, nevertheless, nothing in the Act as it read at the time of the offense to assure "the necessary confidentiality or immunity to overcome the privilege." See the opinion of Justice Brennan [concurring] in Grosso v. United States, 390 U.S. at 72–73, 88 S.Ct.

at 716. Without such assurance it is difficult to believe that the Government's laudable concern with the "gangster-type element"[6] would not result in Federal co-operation with state agencies. In fact, the record indicates that it was in part the high level of co-operation between state and Federal officials that resulted in this conviction.

Under similar circumstances this court recently held that the requirement of a prospective declaration of intent to violate state laws respecting firearms is subject to the Fifth Amendment privilege. Benner v. United States, *supra*. Benner was convicted under 26 U.S.C. §§ 5851 and 5821 (declaration of intent to manufacture a firearm). In Oregon it was illegal for a convicted felon to be in possession of a concealable weapon.

4. In Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969), the Supreme Court, dealing with sellers of marihuana, explicitly distinguishes the earlier line of cases concerning buyers or transferees:

"The vice of the statute in that case [Leary]—as in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923— stemmed from the dilemma which confronted the buyer. The statute purported to make all purchases of marihuana legal from the buyer's viewpoint at his option; all he had to do to avoid the federal penalty was to secure the form and pay the tax. But to exercise that option and avoid the federal penalty, he was forced to incriminate himself under other laws." 396 U.S. at 92, 90 S.Ct. at 286–287.

And *Minor* also approved the prospective self-incrimination language used in *Marchetti*, 390 U.S. at 51–52, 88 S.Ct. at 704, 705, Footnote 4.

5. In this respect, Varitimos v. United States, 404 F.2d 1030 (1st Cir. 1968), cert. denied, 395 U.S. 976, 89 S.Ct. 2126, 23 L.Ed.2d 765 (1969), is distinguishable. That court distinguished *Marchetti*, noting that under Massachusetts law there was no prohibition "against possession of a firearm lawfully acquired under the National Firearms Act," 404 F.2d at 1034.

6. As the Court in *Haynes* noted:

"The Act's requirements are applicable only to shotguns with barrels less than 18 inches long; rifles with barrels less than 16 inches long; other weapons, made from a rifle or shotgun, with an overall length of less than 26 inches; machine guns and other automatic firearms; mufflers and silencers; and other firearms, except pistols and revolvers, 'if such weapon is capable of being concealed on the person * * *.' 26 U.S.C. § 5848(1); Treas.Reg. § 179.20, 26 C.F.R. § 179.20. These limitations were apparently intended to guarantee that only weapons used principally by persons engaged in unlawful activities would be subjected to taxation." 390 U.S. at 87, 88 S.Ct. at 725.

In a footnote, the Court further comments:

" * * * It is pertinent to note that the Committee on Ways and Means of the House of Representatives, while reporting in 1959 on certain proposed amendments to the Act, stated that the 'primary purpose of [the Firearms Act] was to make it more difficult for the gangster element to obtain certain types of weapons. The type of weapon with which these provisions are concerned are the types it was thought would be used primarily by the gangster type element.' H.R.Rep.No.914, 86th Cong., 1st Sess., 2." 390 U.S. at 87–88, 88 S.Ct. at 725.

This court held that if Benner had been a convicted felon at the time of his manufacture of the firearm, that conviction was to be set aside as a violation of his Fifth Amendment rights.[7]  417 F.2d at 425–426.

Applying the *Benner* rationale, we conclude that the effect of the § 5814 declaration requirements read in light of Washington law is to require the self-incrimination prohibited under the Fifth Amendment.  Accord: United States v. Miller, 406 F.2d 1100, 1106 (4th Cir. 1969).

Accordingly, the judgment is reversed.

---

7. The case was remanded for a determination whether Benner had been a felon at the critical time.