**UNITED STATES of America,**
**Appellee,**

v.

**Arthur E. WILLIAMS, Appellant.**
**No. 24054.**

United States Court of Appeals,
Ninth Circuit.

June 5, 1970.

Rehearing Denied July 2, 1970.

Ralph Irby White (argued), San Francisco, Cal., Arthur Eugene Williams, for appellant.

J. Byron Holcomb (argued), Asst. U. S. Atty., Eugene G. Cushing, U. S. Atty., John M. Darrah, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before MERRILL, CARTER and TRASK, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

Appellant was convicted, pursuant to 26 U.S.C. § 5851,[1] for knowingly possessing a firearm which had been transferred in violation of 26 U.S.C. § 5814.[2] Three questions are presented on appeal:

1. Did the evidence sufficiently show that prior to appellant's possession the firearm in question was transferred in violation of § 5814?

2. Did the evidence sufficiently show that the firearm in question was a machine gun within the meaning of § 5848?

3. Does § 5851, as it relates to § 5814, violate the Fifth Amendment privilege against self-incrimination?

The Spitfire Manufacturing Company of Phoenix, Arizona, manufactured and sold to Krasne's, Incorporated, a retail sporting goods store, a Spitfire .45 caliber firearm. On January 25, 1968, Krasne's sold this firearm to Ralph Williams, appellant's brother. Neither sale was made in compliance with 26 U.S.C. § 5814. In late September 1968, appellant acquired possession of the weapon for the purpose of selling it. On September 29, 1968, appellant sold the firearm in question and two clips of ammunition to Dale Corbin, an informer working for the Treasury Department. On October 10, 1968, appellant was arrested

---

1. Section 5851 provides in part, "It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of sections 5811, 5812(b), 5813, 5814, or 5846, * * *."

2. Subsection (a) of § 5814 provides in part, "It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in blank in duplicate for that purpose by the Secretary or his delegate. * * *"

when he met with Corbin pursuant to a second sale of firearms.

The records indicate that the firearm in question was introduced at trial disassembled and with certain parts modified. However, there was testimony to the effect that the firearm, if assembled, was capable of firing automatically in its original as well as its modified condition. Testimony also indicated that appellant knew of the automatic firing capability of the firearm. The Alcohol, Tobacco and Firearms Division of the Internal Revenue Service first became aware of the capability of the weapon in February of 1968, and on May 20, 1968, officially designated the weapon a machine gun.

## I

The initial contention on appeal is that the evidence was insufficient to support the verdict in that it did not show that, prior to the appellant's possession, the firearm was transferred in violation of 26 U.S.C. § 5814. As a basis for this contention appellant first argues that the only relevant transfers in the case were, (1) the transfer from the Spitfire Manufacturing Company to Krasne's, and (2) the transfer from Krasne's to Ralph Williams. He then argues that since the Alcohol, Tobacco and Firearms Division was not aware of the automatic firing capability of the Spitfire at the time of these transfers, they were legal.

■ As we believe that the exchange by which appellant himself acquired possession of the Spitfire was a violative transfer under 26 U.S.C. § 5814, we find it unnecessary to consider appellant's contention with respect to the first two transfers.[3] The broad definition of "transfer" in 26 U.S.C. § 5848 [4]

certainly includes appellant's acquisition of the firearm. Also, at the time appellant acquired the weapon, its automatic firing capability was known to the authorities and it had been officially designated a machine gun. Thus, appellant received and possessed a firearm which had been transferred in violation of § 5814.

## II

■ Appellant's second contention is that the evidence was insufficient to support the verdict in that it did not show that the Spitfire was a machine gun.[5] We disagree. There was testimony from Richard F. Johnson and Paul Westenberger, both employed by the Alcohol, Tobacco and Firearms Division, to the effect that the Spitfire could be fired, and had been fired, automatically. Such testimony was sufficient to support the verdict.

## III

■ Appellant's final contention is that 26 U.S.C. § 5851 abridged his privilege against self-incrimination under the Fifth Amendment to the Constitution. Prior to reaching the merits of this contention we must determine whether it was properly raised in the lower court. A perusal of the record in this case reveals no timely assertion of the constitutional claim now presented on appeal.

The law of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) requires the constitutional privilege to be asserted below or be waived. In *Marchetti* there were repeated

---

3. Since the affirmance of appellant's conviction rests on the transfer of the gun to him, we do not reach the question presented in Varitimos v. United States, (1 Cir. 1968) 404 F.2d 1030, concerning past illegal transfers by other persons.

4. "The term 'to transfer' * * * shall include to sell, assign, pledge, lease, loan, give away, or otherwise dispose of."

5. Section 5848 defines machine gun as, "any weapon which shoots, or is designed to shoot, automatically or semi-automatically, more than one shot, without manual reloading, by a single function of the trigger."

references to the assertion of the claim of the privilege. (390 U.S. pages 41, 49, 50, 51, 54, 60, 88 S.Ct. 697). The court said, " * * * [W]e *hold only* that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements." 390 U.S. at 61, 88 S.Ct. at 709. [Emphasis added] In *Haynes* there were also repeated references to the *claim* of the privilege. (390 U.S. pages 86, 90, 99, 88 S.Ct. 722). The court said "*We hold* that a proper claim of the constitutional privilege against self incrimination provides a full defense * * *." 390 U.S. at 100, 88 S.Ct. at 732. [Emphasis added.]

Nor can appellant find solace in the United States Supreme Court opinion in *Grosso*. There petitioner did not assert his privilege below. But the court said [390 U.S. at 71, 88 S.Ct. at 715] "Given the decisions of this Court in *Kahriger* [United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754] and *Lewis* [Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475], supra, which were on the books at the time of petitioner's trial, and left untouched by Albertson v. SACB, [382 U. S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165], we are unable to view his failure to present this issue as an effective waiver of the constitutional privilege. By the same token, we do not think we can well reach these counts on the theory of 'plain error.' "

Implicit in the Court's decision to consider the constitutional claim in the "special circumstances" of that case, although the claim had not been raised below, was the fact that apposite precedent precluded the claim at the time of the trial. This is not the case here. Appellant's trial occurred almost a year after *Marchetti, Grosso,* and *Haynes* were decided. Thus, this case is different from United States v. Scott, (9 Cir. Mar. 6, 1970), 425 F.2d 55 where there was a "solid wall of circuit court authority" against the constitutional claim

at the time of trial. Having failed to properly raise and preserve the constitutional claim at trial, and there being no justification for this failure, appellant cannot now assert the claim on appeal.

We are familiar with United States v. Sher, (9 Cir. Feb. 4, 1970) 421 F.2d 784 where the constitutional claim to the same statutes invoked here, was raised below and sustained. Our decision turns on appellant's failure to raise and preserve a constitutional claim, and is thus not in conflict with *Sher*.

The judgment is affirmed.

JAMES M. CARTER and TRASK, Circuit Judges (specially concurring):

Notwithstanding our disposition of this case in the majority opinion, we feel constrained to express our view, contrary to the holding of the *Sher* decision, with respect to the merits of appellant's self-incrimination argument.

We cannot see how an intended transferee, acting under 26 U.S.C. § 5814, incriminates himself. If the intended transferee complies with the provisions of the National Firearms Act, the transfer will not be made until the transferee's application has been approved by the Secretary or his delegate. The application will not be approved, however, unless the intended transferee has obtained a certificate from some local law enforcement official, certifying that the firearm is intended by the appellant for lawful purposes. See 26 C.F.R. § 179.99 (1968). Therefore, in a state where possession of a firearm is illegal, compliance with the Act is almost certain to abort the transfer since it is highly unlikely that any local official would issue a certificate. And if the intended transferee neither completes the transfer nor receives possession of the firearm there is no violation. Thus, the hazard of prospective incrimination is speculative and insubstantial at best.

Justice Harlan in discussing prospective incrimination in *Marchetti*, stated:

"Moreover, although prospective acts will doubtless ordinarily involve only speculative and unsubstantial risks of incrimination, this will scarcely always prove true. As we shall show, it is not true here." 390 U.S. at 54, 88 S.Ct. at 705. *Marchetti* must be read against the factual background of the case, where the securing of the wagering stamp, the supplying of this information by federal agencies to state authorities, and the use in evidence of the acquisition of the stamps, clearly incriminated.

MERRILL, Circuit Judge (dissenting):

I dissent.

In holding *Haynes* to have retroactive application, this court stated in Meadows v. United States, 420 F.2d 795, 799 (9th Cir. 1969):

"[T]he defect in the conviction * * goes to the very center of the legal justification for the punishment imposed. To be valid, a punishment following upon the determination that a certain set of facts exists must necessarily presuppose that that set of facts constitutes an offense, *see* H.L.A. Hart, Punishment and Responsibility 5. The decision in *Haynes* negates precisely that presupposition by holding that, as against a plea of the privilege of self-incrimination, § 5851 creates no offense. A punishment in disregard of *Haynes* hence cannot stand."

Against an assertion of the privilege of self-incrimination the set of facts here presented constituted no offense at all under United States v. Sher, 421 F.2d 784 (9th Cir. 1970).

Failure of counsel to assert his client's privilege, whether through lack of knowledge or lack of prescience, seems to me to constitute a plain defect in the trial with the result that an otherwise innocent man stands convicted of an offense which otherwise did not exist under the law.

I would reverse under Rule 52(b) Fed. R.Crim.P.