**Thomas Patterson WEYER, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 26778.**

United States Court of Appeals,
Fifth Circuit.

July 20, 1970.

Thomas Patterson Weyer, pro se.

Harry Brants, Fort Worth, Tex. (Ct. Apptd.), Sidney B. Calloway, Shreveport, La., Charles D. Egan, for plaintiff-appellant.

Eldon B. Mahon, U. S. Atty., W. E. Smith, Asst. U. S. Atty., Fort Worth, Tex., James F. Gaulding, Asst. Regional Counsel, Dallas, Tex., for appellee.

Before AINSWORTH and GODBOLD, Circuit Judges, and DAWKINS, District Judge.

GODBOLD, Circuit Judge:

Appellant Weyer was convicted on May 5, 1967 on two counts of violation of the National Firearms Act, 26 U.S.C. § 5801 et seq. Both counts stemmed from possession of a single machine gun, which was not registered under 26 U.S. C. § 5841, and not transferred to Weyer pursuant to an order form as required

by 26 U.S.C. § 5814. Possession under both circumstances violates 26 U.S.C. § 5851. Weyer's motion in reliance on Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) to vacate his sentence was denied. We reverse.

*Haynes* held that a charge of possession of an unregistered firearm is tantamount to a charge of failure to register, and that registration would require a possessor to implicate himself in other crimes under the National Firearms Act, so that the Fifth Amendment provides a good defense to such a charge. This circuit has recently held that *Haynes* is to be applied retroactively. Brooks v. United States, 424 F.2d 425 (5th Cir. 1970). A defendant who fails to assert his Fifth Amendment privilege under the circumstances of this case does not waive that defense. Grosso v. United States, 390 U.S. 62, 70–71, 88 S.Ct. 709, 19 L.Ed.2d 906, 913–914 (1967); Meadows v. United States, 420 F.2d 795, 797 (9th Cir. 1969); United States v. Miller, 406 F.2d 1100, 1105 (4th Cir. 1969). The motion to vacate must be granted as to Count 8, charging possession of an unregistered firearm.

Count 3, charging possession of the firearm, having been transferred to the accused [1] without an order form, presents similar problems. The charge of possession of a weapon illegally transferred to the possessor is substantially equal to charge of illegal receipt, just as the charge of possession of an unregistered weapon in *Haynes* was substantially equal to a charge of failure to register, since the responsibility for compliance in both cases is on the accused as possessor. Completion of the order form would have revealed that Weyer possessed a firearm illegally under state law.[2] The statutory scheme violated Weyer's self-incrimination privilege. United States v. Sher, 421 F.2d 784 (9th Cir. 1970); see also United States v. Benner, 417 F.2d 421 (9th Cir. 1969); United States v. Miller, 406 F.2d 1100 (4th Cir. 1969); Lauchli v. United States, 402 F.2d 455 (8th Cir. 1968); United States v. Thompson, 292 F.Supp. 757 (D.Del.1968); *contra, e.g.,* Varitimos v. United States, 404 F.2d 1030 (1st Cir. 1968).

The order form requirement is aimed at a "selective group inherently suspect of criminal activities" in "an area permeated with criminal statutes." United States v. Benner, *supra*; see also Marchetti v. United States, *supra*; Albertson v. SACB, 382 U.S. 70, 79, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965). Texas law excepts from its ban on machine guns:

1. The possession of machine guns by the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose.

2. The possession of a machine gun for scientific purpose, or the posses-

1. A series of cases not relevant here hold nearly unanimously that the prohibition of § 5851 against possession of weapons made or transferred in violation of § 5814 or § 5821 (imposing a making tax) does not violate the Fifth Amendment privilege where a previous possessor, rather than the accused, failed to comply with the federal taxation scheme. Burton v. United States, 414 F.2d 261 (5th Cir. 1969); Lewis v. United States, 408 F.2d 1310 (10th Cir. 1969); Reed v. United States, 401 F.2d 756 (8th Cir. 1968); DePugh v. United States, 401 F.2d 346 (8th Cir. 1968); United States v. Taylor, 286 F.Supp. 683 (E.D.Wis.1968). Since a prospective transferee is not in a position to correct for an earlier failure to pay a making or transfer tax, the above cases hold that "full compliance with the statutory scheme" can only mean forebearing from acquiring a weapon which has previously been made or transferred illegally.

2. "Whoever shall possess or use a machine gun * * * shall be guilty of a felony." Vernon's Texas Stat.Ann., Penal Code, Art. 489b. Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), was an analogous situation, in which the accused as transferee of marijuana was required by the federal order form to reveal his violation of state possession statutes.

sion of a machine gun not suitable as a weapon and possessed as a curiosity, ornament, or keepsake.

3. The possession of machine guns by officials and employees of the Texas State Prison System.

Vernon's Texas Stat.Ann., Penal Code, Art. 489b.

But exempted from the federal taxation and order form scheme are the following strikingly similar transfers:

(1) to the United States Government, any State, Territory, or possession of the United States, or to any political subdivision thereof, or to the District of Columbia;

(2) to any peace officer or any Federal officer designated by the regulations of the Secretary or his delegate;

(3) to the transfer of any firearm which is unserviceable and which is transferred as a curiosity or ornament.

26 U.M.C. § 5812(a). The similar exemptions of the two statutes make it clear that virtually the same group of non-exempted persons are forbidden to possess machines guns under state law and required under federal law to reveal the fact of their possession. This information, even in the absence of express statutory authorization, is presumably available to state prosecutors. United States v. Sher, supra, 421 F.2d at 786; see also Grosso v. United States, 390 U. S. at 69, 88 S.Ct. at 714, 19 L.Ed.2d at 913.

There remains an inconsistency between the provisions of the statute and those of the implementing regulations. The government argues, as it did in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and in Minor v. United States, 396 U.S. 87, 90 S.

Ct. 284, 24 L.Ed.2d 283 (1969), that as a practical matter anyone in full compliance with this regulatory scheme will be unable to incriminate himself.[3] The regulations supplement the statute by requiring that the Director of the Alcohol and Tobacco Tax Division approve any transfer, 26 C.F.R. § 179. As a prerequisite to that approval the regulations required a statement of a law enforcement officer

certifying that he is satisfied that the fingerprints and photograph appearing on the application are those of the applicant and that the firearm is intended by the applicant for lawful purposes.

26 C.F.R. § 179.99 (1966).[4]

The government's contention as to transferees is answered by the Supreme Court's analysis in Leary, holding that a similar order form requirement violated the transferee's Fifth Amendment rights. Although Minor found a distinction as to transferors, it left intact the holding in Leary, which differed from the instant case only in that the marijuana transfer tax scheme lacked the specific provision in § 5814 authorizing regulations establishing procedures for determination of the identity of applicants. It should be noted that this provision in the firearms act does not authorize the Secretary to reject on application once identity is determined. Nowhere does the statute indicate that a transfer under such circumstances may be barred rather than taxed. Reading the terms of the firearms act in place of those of the Marijuana Tax Act, we find the language of the Supreme Court in Leary fully applicable to the instant case.

The foregoing shows that at the time petitioner acquired [a firearm]

3. See the discussion supra n. 1 of possessors of firearms earlier transferred without an order form.

4. Subsequent amendments to the regulations put the Fifth Amendment problem in a different context. The responsibility to obtain certification under § 179.99 is now apparently on the transferor, who

under § 179.98 must now file the application instead of the transferee. The amendments also specifically provide:
"Applications to transfer a firearm shall be denied if the transfer, receipt, or possession of a firearm would place the transferee in violation of law."
26 C.F.R. § 179.100 (1969).

he was confronted with a statute which on its face permitted him to acquire the [weapon] legally provided he paid the [$200] transfer tax and gave incriminating information, and simultaneously with a system of regulations which, according to the Government, prohibited him from acquiring [machine guns] under any conditions. We have found those regulations so out of keeping with the statute as to be *ultra vires*. Faced with these conflicting demands, we think petitioner would have been justified in giving precedence to the higher authority: the statute. " '[L]iteral and full compliance' with all the statutory requirements" would have entailed a very substantial risk of self-incrimination.

395 U.S. at 26, 89 S.Ct. at 1542, 23 L. Ed.2d at 76.

█ This case differs from Marshall v. United States, 422 F.2d 185 [5th Cir., 1970] in that Marshall was not part of a select group inherently suspect of state crimes and singled out by the federal statute to incriminate themselves. See United States v. Whitehead, 424 F.2d 446 (6th Cir. 1970); United States v. Benner, *supra*. Possession of the weapon in Marshall's case was not a criminal offense in and of itself. Marshall's offense was possession of a sawed-off shotgun, with the additional factors that he was away from his dwelling and had a criminal record of a certain description. Vernon's Texas Stat.Ann., Penal Code, Art. 489c (1952). Most Texans could obtain and complete order forms without incriminating themselves under this former Texas statute. But the interplay of the order form requirement and Article 489b is such that, for all practical purposes, no Texan transferee within the reach of the federal firearms statute may receive a machine gun lawfully under federal law without incriminating himself under state law.

The motion to vacate should have been granted as to the Count 3.

Reversed and remanded with instructions to grant the motion to vacate.